**Leroy B. McKEE, Appellant,**

v.

**SECOND INJURY FUND OF IOWA, Appellee.**

No. 85–428.

Supreme Court of Iowa.

Dec. 18, 1985.

Thomas J. Logan of Hopkins & Huebner, P.C., Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and Kreg A. Kauffman, Des Moines, for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, LARSON, CARTER, and WOLLE, JJ.

UHLENHOPP, Justice.

This appeal presents the question of whether the commutation provisions of the workers' compensation statute apply to benefits payable under the second injury compensation act. Iowa Code §§ 85.45–.48, 85.63–.67 (1983) (references are to that Code).

On July 19, 1982, the Iowa Industrial Commissioner found claimant Leroy B. McKee totally and permanently disabled and awarded him lifetime benefits. Claimant's employer (or insurer) pays the first 300 weeks, and the Second Injury Fund will pay the remainder commencing January 10, 1988.

On December 9, 1982, claimant petitioned the commissioner to commute the weekly payments to be made by the Fund totaling $119,912.01 to a lump sum of $57,598.11. The Fund resisted the petition. On July 25, 1981, the commissioner denied the petition on the ground that benefits from the Fund are not commutable. Claimant petitioned for judicial review. On February 25, 1985, the district court affirmed the commissioner's decision. Claimant then appealed to this court.

Courts give deference to an agency's construction of its organic act, but are not bound thereby. *Hennessey v. Cedar Rapids Community School District*, 375 N.W.2d 270 (Iowa 1985).

I. Under section 85.45 of the Code, future payments of compensation may be commuted to a lump sum when the period of compensation can be definitely determined and when a showing is made which satisfies the commissioner that commutation is in the best interests of the claimant or that periodic payments will entail undue expense or hardship to the employer. Section 85.47 provides:

When the commutation is ordered, the industrial commissioner shall fix the lump sum to be paid at an amount which will equal the total sum of the probable future payments capitalized at their present value and upon the basis of interest, calculated at five percent per annum. Upon the payment of such amount the employer shall be discharged from all further liability on account of such injury or death, and be entitled to a duly executed release, upon filing which the liability of such employer under any agreement, award, finding, or judgment shall be discharged of record.

When a worker sustains a second injury of a certain kind, the second injury compensation act, which is a division of the chapter dealing with regular workers' compensation, provides benefits over and above regular compensation. § 85.64. The Fund itself is held by the state treasurer, and benefits are disbursed on the order of the industrial commissioner. The Fund ranges in size from a high of $500,000 to a low of $300,000. Contributions to the Fund are unrelated to benefits. When the Fund drops below $300,000, employers (or their insurers) contribute to the fund, on the occurrence of a compensable death, the sum of $2000 in the case of death with dependents or $5000 in the case of death with no dependents. At the time of these proceedings the Fund had thirty-one claimants. *See* § 85.66.

Section 85.67 governs the administration of the Fund:

The treasurer of state shall be charged with the conservation of the assets of the second injury fund, and the collection of contributions to the fund. The attorney general shall appoint a staff member to represent the treasurer of state and the fund in all proceedings and matters arising under this division. In making an award under this division, the industrial commissioner shall specifically find the amount the injured employee shall be paid weekly, the number of weeks of compensation which shall be paid by the employer, the date upon which payments out of the fund shall begin, and, if possible, the length of time the payments shall continue.

II. Claimant argues that the commutation sections apply to the sections creating the Fund because both are part of the workers' compensation statute and because the latter sections do not provide procedure for payment of benefits—the regular compensation sections of the chapter must be looked to for that procedure, and these, claimant says, include commutation.

The Fund makes several contentions. It first argues that commutations of Fund payments are not financially feasible. The full credit of the employer (or the insurer) is pledged to the payment of regular compensation or commutation of regular compensation. On the other hand, the statute allows the Fund to run as low as $300,000 for all covered claimants; the Fund could not withstand an onslaught of commutations. The Fund argues that this negates legislative intent to allow commutation of second injury fund benefits.

The Fund also points to language of the statutes which it contends negate legislative intent to allow commutation. Quoted section 85.67 on administration requires the commission to find the amount which the claimant shall be paid "weekly"; section 85.64 provides the Fund begins payments of benefits "after the expiration of the full period provided by law for the payments thereof by the employer"; section 85.67 provides that the commissioner shall find "the date upon which payments out of the fund shall begin"; and sections 85.45 and .47 on regular compensation apply to an "employer"—which the Fund is not.

III. The parties cite two decisions on the question. Those decisions go in opposite directions. One is *Industrial Accident Board v. Miears*, 227 S.W.2d 571 (Tex.Civ. App.1950). In that case the court took the view that the second injury fund is an integral part of the workers' compensation law itself. The court held:

From our view that the right of an employee to additional compensation out of the Second Injury Fund is an integral part of the Workmen's Compensation Law, it follows that such right is subject to the same provisions of the Act as is the right to recover compensation in other instances, because the legislature did not see fit to provide otherwise. Having found as a fact that plaintiff should be paid his compensation in a lump sum, the court erred in not rendering such judgment.

*Id.* at 578. The Texas Supreme Court affirmed for the reasons stated by the court of civil appeals. *Miears v. Industrial Accident Board*, 149 Tex. 270, 278–79, 232 S.W.2d 671, 676 (1950).

The other decision is *Moreland v. Industrial Comm'n*, 47 Ill.2d 273, 265 N.E.2d 161 (1970). In Illinois the statute provides, "Such [second injury] pension shall be paid monthly." Ill.Rev.Stat. ch. 48, par. 138.8(f) (1969). The section continues: "In its award the Commission ... shall specifically find ... the date upon which the pension payments commence and the monthly amount of the payments.... The Treasurer shall 30 days after the date upon which payments out of the Special Fund have begun ... and every month thereafter, mail to the injured employee ... all compensation accrued to that date...." The court held the lump sum provision of the general compensation law was inapplicable:

We believe it is clear from the provisions above that the Special Fund may only be disbursed according to the terms provided for awards under paragraph (f) of section 8. With regard to petitioner's pension, the award necessarily provided for monthly payments. These specific limitations as to awards and payments of pensions from the Special Fund must be held controlling as against the general provision in section 9 for lump sum payments.

. . . .

The Special Fund is maintained by limited assessments against those employers liable for an award due to an employee's death or loss of a member. (Ill.Rev. Stat.1969, ch. 48, pars. 138.7(f), 138.8(e) 20.) The fund is designed to maintain a

balance between $150,000 and $250,000; the balance is examined twice yearly, and the fund's receipts cease whenever the balance reaches the maximum amount. (Ill.Rev.Stat.1969, ch. 48 par. 138.8(e) 20.) As the circuit court noted in its opinion, the fund would be rapidly depleted and unable to continue payments of pensions if lump sum payments were allowed. Further, we believe the policy of protecting the employee is better served by the interpretation we adopt, for it seems unlikely that the lump sum payment provision was intended to embrace the Special Fund, the payments from which are always made to totally disabled persons. Dissipation of lump sum payments by these individuals could often result in their becoming public charges. We therefore conclude that the legislature did not intend in section 9 to grant the Industrial Commission jurisdiction to consider petitions for lump sum payment of pensions from the Special Fund.

*Id.* at 276–77, 265 N.E.2d at 163–64.

IV. While the language of the Iowa second injury statute is perhaps less strong than that of Illinois in indicating the commutation section of the general compensation statute does not apply, we are impressed, as bearing on legislative intent, with the rationale of the Illinois Supreme Court that if commutations were allowed "the fund would be rapidly depleted and unable to continue payments," and that "the policy of protecting the employee is better served" by requiring the periodic payments because the payments "are always made to totally disabled persons." *Id.* at 277, 265 N.E.2d at 164.

When we place in the balance the principle that we give deference to an agency's construction of its organic act (although we are not bound thereby), we are persuaded that the commutation sections in our general compensation statute do not apply to second injury fund benefits. We uphold the judgment of the district court.

AFFIRMED.