# F. M. MIEARS V. INDUSTRIAL ACCIDENT
# BOARD OF THE STATE OF TEXAS.

No. A-2642. Decided June 28, 1950.
Rehearing overruled October 4, 1950.
(232 S. W. 2d Series, 671.)

*Fred Parks,* of Houston, for petitioner, Miears.

The Court of Civil Appeals erred in holding that a blind man who is conclusively totally and permanently disabled by the loss of sight of both eyes is entitled to only 301 weeks of compensation for such incapacity, payable as follows: 100 week's compensation from the insurance carrier of the employer of the injured employee and 201 week's compensation of and from the Second Injury Fund, created by Section 12c of Article 8307, as amended. Lawson v. Suwanee Fruit and Steamship, 336 U. S. 198, 93 L. Ed. 611, 69 Sup. Ct., 503; 46 Texas Jur. 363.

*Price Daniel,* Attorney General of Texas, and *L. P. Lollar,* Assistant Attorney General, for respondent.

The Court of Civil Appeals erred in holding that compensation out of the Second Injury Fund should be paid in a lump sum, and that said amount should bear interest, as there was no showing the fund was sufficient to justify a lump sum judgment, and no provision was made in the Act for interest. Eastland County v. Chapman, 278 S. W. 425; Ash v. Barmsdall Oil Co., 118 Fed. 2d 699.

Mr. Justice Hart delivered the opinion of the Court.

This case requires the construction of the Second-Injury Fund Act, a part of the Workmen's Compensation Act, Article 8306, Section 12c, Revised Civil Statutes, as amended in 1947.

The stipulation of the facts, on which the case was tried, shows that the petitioner in June 1929, received a non-compensable injury which resulted in the total and permanent loss of the sight of his right eye. On November 9, 1946, he received an accidental injury which resulted in the total and permanent loss of the sight of his left eye. The petitioner was paid by his employer's insurer, for the second injury, the compensation provided by Article 8306, Section 12, for the loss of one eye, being $25.00 per week for 100 weeks. He then applied to the Industrial Accident Board for additional compensation under Section 12c from the Second-Injury Fund and the Board awarded him compensation for 201 weeks, which represented the compensation for total and permanent disability (401 weeks) after deducting therefrom the compensation actually paid for the loss of the second eye (100 weeks) and also the compensation which would have been payable for the loss of the first eye (100 weeks), if that loss had been compensable under the Workmen's Compensation Act.

The district court on appeal held that deduction should be

made only for the compensation paid for the second injury and awarded interest on past due installments of compensation from their due dates, but denied the petitioner's claim for a lump-sum payment. The Court of Civil Appeals modified and affirmed the judgment of the district court. It held that the Board was correct in deducting 100 weeks for the first injury as well as 100 weeks for the second injury, and that the petitioner was entitled to a lump-sum payment and interest on past due installments and also on the amount of the judgment from its date. 227 S. W. 2d 571.

The problem of the compensation to be awarded to a previously injured workman when he receives a second injury has been troublesome and has led to various solutions by the legislature and courts. See notes, 44 Mich. L. Rev. 1161; 4 Washington and Lee L. Rev. 112; Annotations, 67 A. L. R. 794, 30 A. L. R. 979. The problem was recognized by the Texas Legislature at the time of the enactment of our Workmen's Compensation Act in 1917. Acts, 35th Leg., R. S., Ch. 103, p. 269. Section 12c of Part I of that act, which was later codified as Section 12c of Article 8306 of the Revised Civil Statutes of 1925, read as follows:

"Section 12c. If an employe who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association shall be liable because of such injury only for the compensation to which the subsequent injury should have entitled the injured employe had there been no previous injury."

The Legislature by adopting Section 12c recognized the policy in favor of limiting liability for second injuries in order to encourage the employment of persons physically handicapped by previous injuries. Obviously, an employer would be discouraged from employing such persons if he knew that under the law his insurer would become liable in the event of a second injury for the disability resulting from the combined effect of the two injuries, and not merely for the disability resulting from the second injury considered alone. This policy was recognized by the Commission of Appeals in applying the provisions of Section 12c in a case having a factual situation similar to the present case. Gilmore v. Lumbermen's Reciprocal Ass'n., Com. App., 292 S. W. 204. In that case the employee had lost one eye "in an accident during his childhood" and lost the second eye as a result of a compensable injury. It was held that he could recover only the compensation fixed by statute for the

loss of one eye. As to the statutory policy, the Court said: (292 S. W. at p. 206)

"On first impression it would seem that statutes similar to the particular article under consideration would work a great injustice upon those who have been so unfortunate as to lose an eye or a limb, but upon more mature consideration we can see what we consider to be good reasons for the enactment of such laws. If two men should apply to an industrial concern for employment, one of them having two eyes and the other only one, and the employer knew that if the man with two eyes lost one eye during the employment that he would be entitled to $1,500 compensation, and if the man with one eye lost it he would be entitled to $6,000 compensation, the employer, having to pay a higher rate of insurance because of the additional hazards for the man with one eye, other things being equal, would, if he conducted his business on sensible business methods, give employment to the man with two eyes; and after a careful investigation of the legislation on, and judicial interpretation of the question, we have reached the conclusion that the Texas statute under discussion and similar statutes in other states were enacted for the benefit of persons as a class who enter employment with permanent partial disability rather than to their detriment."

In spite of the soundness of the reasoning behind the provisions of Section 12c, it is obvious that in cases to which it applied before the 1947 amendment the employee who was totally and permanently disabled as a result of the combined effect of successive injuries received less compensation than would otherwise be awarded for total and permanent disability. As a means of obviating the inequality of treatment resulting from such statutes, it was urged that "second-injury funds" should be created out of which additional compensation could be paid to such employees. See Sharkey, "The Legal Situation as to Second-Injury Cases and the Necessity for Separate Funds for Such Cases," U. S. Dept. Labor, Bureau of Labor Statistics, Bulletin No. 577 (1933), p. 146; Surlock, "Workmen's Compensation Legislation-Enactment of a 'StateFund' Amendment," 14 Oklahoma Bar Journal, 1331. In answer to the demand for such a statute, the Legislature in 1947 adopted Chapter 349, Acts, 50th Leg., R. S., p. 690, reading as follows:

"Section 1. That Article 8306, Section 12c, Revised Civil Statutes of Texas of 1925, be and the same is hereby amended so as to hereafter read as follows:

"Article 8306.

"Sec. 12c. If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association (Texas Employers' Insurance Association) shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury; provided there shall be created a fund known as the 'Second-Injury Fund' hereinafter described, from which an employee who has suffered a subsequent injury shall be compensated for the combined incapacities resulting from both injuries.

"Sec. 12c-1. If an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye, becomes permanently and totally incapacitated through the loss or loss of use of another member or organ, the association shall be liable only for the compensation payable for such second injury provided, however, that in addition to such compensation and after the combination of the payments therefor, the employee shall be paid the remainder of the compensation that would be due for the total permanent incapacity out of the special fund known as 'Second-Injury Fund,' hereafter defined.

"Sec. 12c-2. The special fund known as the 'Second Injury Fund' shall be created in the following manner:

"(a) In every case of the death of an employee under this Act where there is no person entitled to compensation surviving said employee, the association shall pay to the Industrial Accident Board the sum of One Thousand, Five Hundred Dollars ($1,500) to be deposited with the Treasurer of the State for the benefit of said Fund and the Board shall direct the distribution thereof.

"(b) When the total amount of all such payments into the Fund, together with the accumulated interest thereon, equals or exceeds One Hundred Thousand Dollars ($100,000) in excess of existing liabilities, no further payments shall be required to be paid to said Fund; but whenever thereafter the amount of such Fund shall be reduced below Fifty Thousand Dollars ($50,000) by reason of payments to such Fund, then payments to such Fund shall be resumed forthwith, and shall continue until such Fund again amounts to One Hundred Thousand Dollars $(100,000) including accumulated interest thereon."

"Sec. 2. The fact that there is an urgent need to facilitate the employment of handicapped persons including a large number of returning veterans through the establishment of a Special Fund out of which such persons may be compensated

when they sustain a subsequent injury, creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be, and the same is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted."

It will be noted that this amendment left the former wording of Section 12c substantially unchanged, but added a new clause and two new paragraphs designated 12c-1 and 12c-2 relating to the Second-Injury Fund.

■ The first question which presents itself is whether Section 12c, as amended, is applicable to this case, since the petitioner's first injury was non-compensable. So far as the liability of the employer's insurer is concerned, the parties in this case have assumed that it was liable for the second injury to the employee only on the basis of the loss of one eye; in other words, that Section 12c is applicable and that the construction of the statute as announced in Gilmore v. Lumbermen's Reciprocal Ass'n., supra, still controls. We think that the parties are correct in this assumption. The added provisions of the new statute do not purport to alter the meaning of Section 12c, as applied to a case like this. If anything, the limitation on the liability of the employer's insurer is emphasized by the language of Section 12c-1 that "the association shall be liable only for the compensation payable for such second injury."

The opinion in the Gilmore case shows that in that case, as in the case now before us, the first injury was not compensable under the Workmen's Compensation Law, although no discussion of the effect of that fact on the applicability of Section 12c is found in the opinion. The Gilmore case has been followed in Hartford Accident & Indemnity Co. v. Leigh, Tex. Civ. App., 57 S. W. 2d 605, and Maryland Casualty Co. v. Gunter, Tex. Civ. App., 167 S. W. 2d 545. See also 18 Tex. Law Rev. 243. No case has been found in which the holding in the Gilmore case has been questioned. However, it should be noted here that in cases not involving specific injuries such as in this case, it has been held that Section 12c does not apply except where there has been a first injury which was compensable under the Workmen's Compensation Act, and that the employer's insurer is liable for all of the disability of which the second injury is a producing cause. Texas Employers' Insurance Ass'n. v. Clark, Tex. Civ. App., 23 S.W. 2d 405 (writ dismissed) ; Texas Employers' Insurance Ass'n. v. Parr, Com. App., 30 S. W

2d 305; Casualty Reciprocal Exchange v. Dawson, Tex. Civ. App., 81 S. W. 2d 284, (writ of error dismissed), 130 Texas 362, 107 S. W. 2d 994; Texas Indemnity Co. v. McNew, Tex. Civ. App., 90 S. W. 2d 1115 (writ dismissed) ; Texas Indemnity Co. v. Arant, Tex. Civ. App., 171 S. W. 2d 915 (writ refused, w. o. m.). See also Lawler, "Texas Workmen's Compensation Law," sec. 117; 45 Tex. Jur. "Workmen's Compensation," sec. 186. We need not attempt to resolve the apparent conflict between the cases just cited and the Gilmore case, because, in our opinion, the Gilmore case has settled the law that Section 12c is applicable to cases involving specific injuries such as in this case and there is nothing in the 1947 amendment to show a legislative intent to change the law in this respect. Indeed, as we have pointed out, both parties in this case in effect conceded that Section 12c is applicable here. Of course, an entirely different case would be presented if Section 12c were not applicable and if the employer's insurer had become liable for total and permanent disability as a result of a second injury. Whether the 1947 act had the effect of changing the meaning to be given to the word "injury" as used in Section 12c is a question which is not raised here and we do not decide it, except to hold that the Gilmore case is still applicable to facts such as appear in this case.

The issue presented to us is different from the question decided by the Supreme Court of the United States in Lawson v. Suwannee Fruit & Steamship Co., 336 U. S. 198, 93 L. Ed. 611, 69 Sup. Ct. 503, which is cited by the parties and which was referred to in the opinion of the Court of Civil Appeals in this case. There the question was whether the second-injury fund act was applicable where the first injury was non-compensable, the controverted issue being whether the employer should be liable for total and permanent disability, or on the other hand, whether the second-injury fund should be held liable for the difference between the specific compensation for the second injury considered alone and the compensation for total and permanent disability. It apparently was conceded that this was the correct measure of the fund's liability, if it was liable at all. In the present case, however, the parties agree that the Second-Injury Fund Act is applicable, the only contest being over the extent of the fund's liability.

The parties agree that there must be a deduction from the compensation payable for total permanent incapacity, because Section 12c-1 provides that the fund shall be liable for "the remainder" of such compensation. The point at issue is how

much should be deducted. The Board insists that there should be deducted the compensation payable for both injuries, considered separately (200 weeks), while the petitioner asserts that only the compensation for the second injury (100 weeks) should be deducted.

A consideration of the language of the statute, as well as the purposes it was designed to serve, leads us to the conclusion that the petitioner's position is correct. The newly-added clause of Section 12c provides for a Second-Injury Fund, *"from which* an employee who has suffered a subsequent injury shall be compensated for the combined incapacities suffered from both injuries." This indicates that the intention of the Legislature was to create a fund out of which the employee would be paid enough to make up the difference between the amount previously allowed him by the terms of Section 12c (only the specific compensation provided for the second injury) and the amount which otherwise would be allowed for the incapacity resulting from the combined effect of both injuries. Moreover, Section 12c-1 provides that "the association shall be liable only for *the compensation payable for such second injury,* provided, however, that in addition to *such compensation* and after the combination of the payments *therefor,"* the employee shall be paid the compensation that would be due for total and permanent incapacity out of the Second-Injury Fund. The word "therefor" naturally refers to the payments for the second injury; and the word "combination" indicates that the total compensation payable for the second injury, including all installments actually paid and those payable in the future, should be deducted. We find no basis in the language of the statute for saying that there should also be a deduction in the amount of the compensation which would be payable for the first injury if it were compensable. It is settled law that the Workmen's Compensation Act should be construed liberally in favor of the injured workman, Huffman v. Southern Underwriters, 133 Texas 354, 128 S. W. 2d 4; 45 Tex. Jur., "Workmen's Compensation," Section 7, and it would therefore not be proper to supply by implication a restriction on the employee's rights which is not found in the language of the statute.

The construction of the Act we have adopted serves the purpose of compensating the injured employee for the total and permanent incapacity he has actually suffered, without sacrificing the policy of encouraging the employment of physically handicapped workers. The employer's insurer remains liable only for the compensation payable for the second injury considered alone; the remainder of the compensation is paid out of the fund

which is made up of sums which, except for this statute, would be windfalls to insurers in other cases.

■ The Board urges, however, that the payment of the amount claimed by the petitioner would amount to a double payment for the first injury. This argument cannot be applied to the petitioner in this particular case because the stipulation shows that his first injury was non-compensable and that he in fact received no workmen's compensation for it. The Board argues further, however, in effect that it would be unfair to discriminate between claimants whose first injury was compensable and those whose first injury was not. Whether such a discrimination should be made is a question which is not now before us, and we do not think it would be proper to decide it in this case. Our holding is merely that where the specific injuries shown by the facts in this case have been suffered by the employee, he is entitled to compensation from the Second-Injury Fund for total and permanent disability after the deduction of only the compensation payable for the second injury.

Our holding is in accord with decisions in other states having similar statutes providing for payments out of second-injury funds. McDonald v. State Treasurer, 58 Idaho 535, 16 P. 2d 988; Lehman v. Schmahl, 179 Minn. 388, 229 N. W. 553. See also State Industrial Commission v. Newman, 222 N. Y. 363, 118 N. E. 794; Panther Creek Mines Co. v. Industrial Commission, 342 Ill. 68, 173 N. E. 818. Apparently, in New Jersey the statute expressly requires the deduction of the compensation payable for both injuries, Addotta v. Blunt, 114 N. J. L. 85, 176 Atl. 105, in this respect being in marked contrast to our own statute.

The Board cites Stevens v. Kelly-Carter Coal Co., 140 Kan. 441, 37 P. 2d 48, Masoner v. Wilson & Co., 141 Kan. 882, 44 P. 2d 265 and Bennett v. White Coal Co., 288 Ky., 827, 157 S. W. 2d 73. These cases, however, do not involve the construction of second-injury fund statutes. The statutes in those cases were intended merely to limit the liability of the employer's insurer for disability produced by a second injury, the method adopted being to deduct from the compensation for total and permanent disability the compensation which would have been payable for the first injury. We therefore do not consider those decisions persuasive.

We think that the Court of Civil Appeals correctly decided that the petitioner was entitled to the payment of compensation

in a lump sum and that both lower courts were correct in awarding judgment for interest, for the reasons stated in the opinion of the Court of Civil Appeals.

The judgment of the Court of Civil Appeals is reversed in so far as it reduced the compensation awarded to petitioner by the district court; otherwise, the judgment of the Court of Civil Appeals is affirmed.

Opinion delivered June 28, 1950.

Rehearing overruled October 4, 1950.