The TRAVELERS INSURANCE COMPANY, Appellant,

v.

Ike GLENN, Jr., Appellee.

No. 6488.

Court of Civil Appeals of Texas.

Beaumont.

May 10, 1962.

Rehearing Denied June 6, 1962.

Baker, Botts, Andrews & Shepherd, Houston, for appellant.

J. C. Zbranek, Liberty, for appellee.

HIGHTOWER, Chief Justice.

Plaintiff brought three suits under the Workmen's Compensation Act based upon three separate injuries, and three separate awards of the Industrial Accident Board. Plaintiff had the same employer in each instance, and this employer had the same insurance carrier at the time of all three injuries. By agreement all three suits were consolidated and tried as one. The third injury was abandoned during the course of the trial and no issues in reference to it were submitted to the jury.

The jury found that plaintiff was totally disabled for 150 weeks and 75 percent permanently partially disabled as a result of the first injury, which occurred February 15, 1957. The jury also found plaintiff was totally disabled for 78 weeks, and permanently partially disabled with an $88.00 per week difference between his average weekly earnings before his second injury, and his wage earning capacity during his incapacity, as a result of his second injury, which occurred June 30, 1958. Both injuries were compensable general injuries. The trial court entered its judgment for plaintiff for compensation for the second injury only and gave defendant credit for all payments made after the date of the second injury.

Defendant first complains of the action of the trial court in disregarding certain findings of the jury in response to Issues 25, 26, 27, and 28. These issues and the answers were as follows:

"SPECIAL ISSUE NO. 25

"Do you find from a preponderance of the evidence that the injuries of February 15, 1957, contributed to the incapacity, if any, suffered by Ike Glenn, Jr. after June 30, 1958?

"ANSWER: Yes.

"SPECIAL ISSUE NO. 26

"From a preponderance of the evidence, what do you find to be the percentage or degree of incapacity which Ike Glenn, Jr. would have sustained as a result of the injury of June 30, 1958, had there been no previous injury?

"ANSWER: None.

"SPECIAL ISSUE NO. 27

"From a preponderance of the evidence, what do you find to be the duration of the incapacity which Ike Glenn, Jr. would have sustained as a result of the injury of June 30, 1958, had there been no previous injury?

"ANSWER: None.

"If you have answered Special Issue No. 13 'Yes', and only in that event, then answer:

"SPECIAL ISSUE NO. 28

"Do you find from a preponderance of the evidence that the plaintiff's incapacity, if any, since June 30, 1958, would not have resulted but for the injury on February 15, 1957?

"ANSWER: Yes."

■ Section 12c of Article 8306, Vernon's Ann.Civ.St., was intended to afford an insurance carrier the protection from having to pay an insured party for incapacity resulting from a prior injury, for which it was not liable. The jury found the second injury was the producing cause of total temporary incapacity for 78 weeks and permanent partial incapacity and the court entered judgment for this recovery only.

Even though the jury also found the plaintiff sustained certain incapacity as the result of the first injury, the trial court in its judgment allowed no recovery for the first injury. The defendant could not be harmed under these circumstances, as there could be no double recovery or overlapping of the amount the plaintiff was awarded by the court in its judgment.

We also feel the action of the trial court in disregarding Special Issues 25, 26, 27, and 28 was not error because these issues were not properly submitted in order to arrive at ultimate issues upon which the defendant could base a defense under sec. 12c of Art. 8306. Even though Special Issue 25 inquired of the jury as to whether the first injury contributed to the plaintiff's incapacity, no issue was submitted to determine the extent of the contribution. This extent could have been determined by asking the jury what percent of plaintiff's present incapacity, if any, resulted solely from the second injury, or by asking the jury what percent of the plaintiff's present incapacity, if any, resulted solely from the first injury. We hold that asking the jury what percent of incapacity plaintiff would suffer as a result of the second injury had there been no previous injury is not a proper issue.

The way these issues were framed the plaintiff was in a trap from which he could not extricate himself. The first injury was to his right arm and other parts of his body. The second injury occurred when plaintiff was lifting a heavy weight and the same arm gave way, resulting in further injury to plaintiff's arm and to his back. No one could argue that the plaintiff would not have been injured the second time had there been no previous injury. That is the very logic argued by the attorney for defendant on these issues, as follows:

"Special Issue No. 26 asks you, what do you find to be the percent or degree of incapacity which Ike would have suffered as a result of the accident of June 30 had there been no previous injury. Well, now, let's think back a minute to how that June 30 injury happened according to Ike, which is the only testimony on it we have got. He says he was lifting up on something— I don't remember anything about 2 or 3 hundred pounds, I just remember it was a gin pole, said he was lifting on something and arm gave out and he twisted his back a little bit. Now, that wouldn't have happened at all if it hadn't have been for the February 15 accident."

The jury must find that plaintiff, under these circumstances, would have suffered no incapacity had there been no previous injury, but this was not a finding as to the percentage of disability plaintiff was suffering solely as a result of the second injury. Federal Underwriters Exchange v. Tubbe, Tex.Civ.App., 193 S.W.2d 563.

By reason of our foregoing conclusions, appellant's fifth point complaining of the failure of the trial court to give it credit for 81 weeks of compensation it had previously paid appellee by reason of the first injury is also overruled.

By its third point of error appellant complains of the failure of the trial court to declare a mistrial. It contends that in his closing argument appellee's counsel informed the jury that the effect of an affirmative answer to Special Issue No. 30 would deprive appellee of compensation benefits. Special Issue No. 30, and the answer thereto, reads:

"Do you find from a preponderance of the evidence that on and after a certain date the incapacity resulting from the injuries, if any, sustained on February 15, 1957, or the effects thereof, and the incapacity resulting from the injuries, if any, sustained on June 30, 1958, or the effects thereof, are confined to the Plaintiff's arm?

"To which issue, the jury answered 'No'."

In his final argument concerning this issue, counsel for appellant sought to influence the jury to find that the incapacity of the injury was confined solely to the arm, and, in effect, urged that appellant was willing to pay to such extent. Subsequently, in the closing argument appellee made the following argument:

"* * * Finis says [counsel for appellant] 'Oh, we want to pay for that arm.' Special Issue No. 30, and when he read it, he didn't like it like it's submitted, so please read it carefully. It says, 'Do you find that the incapacity resulting from the injury, if any, or the effects thereof, if it's limited to the arm—' That's the thing, that's the coconut here, my friends. *They want to pay him for that arm because they can wash him out that way.* * * * They don't want to consider—they don't want to pay him for the effects of those injuries though and that's the problem in this case." (Italics ours)

Objection to such argument was sustained by the court in the following language: "Ladies and Gentlemen: On the statement of counsel that that would wash Ike out, disregard that for all purposes just as though you never heard it. Forget it."

Even should we concede that jurors of ordinary intelligence would not have realized the effect of any answer made to such issue, and should we concede that such argument had the effect contended by appellant, we, nevertheless, are of the opinion that the forceful instruction to disregard by the trial judge cured any harm that might have resulted. The language of Justice Norvell is pertinent:

"During the heat of trial extravagant and ill-considered statements are often made. The prejudice resulting from such remarks can generally be removed by an admonition to the jury from the presiding judge and we are unwilling to accede to the proposition that juries pay little or no attention to the instructions of trial judges. We do not re-

gard the improper argument made in this case as being beyond correction by means of a proper instruction." Younger Bros. Inc., v. Myers, 159 Tex. 585, 324 S.W.2d 546.

Further complaints of appellant are to the effect that other remarks of counsel for appellee were such as to cause rendition of an improper judgment. We have carefully considered such remarks in the light of the whole record. We deem them trivial and the complaints in connection therewith untenable.

The judgment is affirmed.