**William H. MATHIS, Appellant,**

v.

**CHARTER OAK FIRE INSURANCE
COMPANY, and Travelers
Indemnity Company, Appellees.**

No. 12–84–0002–CV.

Court of Appeals of Texas,
Tyler.

March 13, 1986.

Rehearing Denied April 17, 1986.

Dick Davis, Sammons, Parker, Daugherty & Davis, Charles H. Clark, Tyler, for appellant.

Michael Hatchell, Ramey Firm, Tyler, for appellees.

COLLEY, Justice.

This is a workers' compensation case. While employed by Kelly Springfield Tire Company, William H. Mathis sustained four compensable general injuries to his back. The injuries occurred one each year in 1978, 1979, 1980 and 1981. Charter Oak Fire Insurance Company was Kelly Springfield's compensation carrier at the times of the 1978 and 1979 injuries. Travelers Indemnity Company was the carrier when the 1980 and 1981 injuries occurred.

On December 31, 1981, the Industrial Accident Board made awards of compensation under the Workers' Compensation Act[1] to Mathis for each of the injuries. Charter Oak and Travelers (together "the companies") brought separate suits in the district courts of Smith County to set aside these awards.[2] The four suits were consolidated for trial on the companies' motions. Trial was to a jury who found that each injury was a producing cause of total and permanent incapacity. In response to contribution issues submitted, the jury found that the 1978, 1979 and 1980 injuries respectively contributed to Mathis' successive incapacities as follows: 1978 injury, 40%; 1979 injury, 20%; and 1980 injury, 40%. No contribution issue respecting the 1981 injury was submitted. On that verdict, the trial court rendered judgment in favor of Mathis for compensation in a lump sum on Cause No. 82–137 and granted take-nothing judgments against Mathis in Cause Nos. 82–134, 82–135 and 82–136. The take-nothing judgments in Cause Nos. 82–136, 82–135, and 82–134 were apparently granted in response to the companies' motions for judgment n.o.v.

Charter Oak presents a single point of error in its appeal in Cause No. 82–137, contending that the court erred in overruling its motion for judgment n.o.v. "because there was no evidence to support the jury's answer to Special Issue No. 11" dealing with wage rate.[3]

By two cross-points in Cause Nos. 82–136, 82–135 and 82–134, the companies argue that the take-nothing judgments in these cases should be affirmed in any event "for lack of evidence to support the wage rate finding" made by the jury in response to Special Issues 24, 37 and 50. Alternatively, the companies argue that should this court reverse the judgments in these causes, a remand should be ordered because the four findings of total and permanent incapacity are in irreconcilable conflict "with themselves and the contribution findings...."

Mathis appeals from the take-nothing judgments entered in Cause Nos. 82–134, 82–135 and 82–136. He alleges by his first four points of error that the trial court erred in granting the companies' motions for judgment n.o.v. in Cause Nos. 82–136

1. TEX.REV.CIV.STAT.ANN. art. 8306 § 1 et seq. (Vernon 1967 and 1986 Supp.), hereinafter generally referred to as the Workers' Compensation Act or the Act.

2. Trial Cause No. 82–137 had as its subject the 1978 injury; Trial Cause No. 82–136, the 1979 injury; Trial Cause No. 82–135, the 1980 injury; and, Trial Cause No. 82–134, the 1981 injury.

The cases will hereinafter be referred to by their trial cause numbers.

3. Special Issue No. 11 read:
 Find from a preponderance of the evidence the average daily wage which WILLIAM HARVEY MATHIS earned during the days he actually worked in the year immediately preceding October 10, 1978.

and 82–135, the 1979 and 1980 injuries because, considering the verdict and the undisputed evidence relating to wage rate, the court should have signed and rendered a judgment in Mathis' favor for compensation in a lump sum [4] in those causes. Under his final two points of error, Mathis asserts that the court erred in overruling his motion for mistrial and in granting the take-nothing judgment in Cause No. 82–134 because an "irreconcilable conflict" exists between the jury's findings that Mathis suffered total and permanent incapacity resulting from the 1981 injury, and the findings of the jury in response to the contribution issues.[5]

The companies present no evidentiary points regarding jury findings except with reference to the wage rate finding in each case. None of the parties complain of the form of submission of the contribution issues in Cause Nos. 82–137, 82–136 and 82–135 or to the court's failure to submit a contribution issue in Cause No. 82–134.

We affirm the judgment in Cause No. 82–137; reverse the take-nothing judgments in Cause Nos. 82–136 and 82–135 and render judgments in favor of Mathis in those two cases; and affirm the judgment in Cause No. 82–134.

Mathis' rights to compensation in these cases must be determined solely by the provisions of the Act for as Judge Hickman observed in *Rogers v. Traders & General Insurance Company*, 135 Tex. 149, 139 S.W.2d 784, 785 (1940), "the right of a claimant to recover compensation does not rest at all upon the common law, but upon the statutes alone, which both create and measure that right."

A worker who has waived his common law and statutory rights of action, and who thereafter sustains an injury in the course of his employment with a subscriber under the Worker's Compensation Act, "shall be paid compensation by the [carrier]" as provided by the Act. TEX.REV.CIV.STAT. ANN. art. 8306, §§ 3a and 3b (Vernon 1967). The Act as it existed at all times relevant to this appeal provided compensation for total incapacity as follows:

Sec. 10. While the incapacity for work resulting from the injury is total, the association shall pay the injured employee a weekly compensation equal to sixty-six and two-thirds per cent (66⅔%) of his average weekly wages, but not more than the maximum weekly benefit nor less than the minimum weekly benefit set forth in Section 29 of this article, and in no case shall the period covered by such compensation be greater than four hundred and one (401) weeks from the date of injury.

Act of May 15, 1973, ch. 88, § 5, 1973 Tex.Gen.Laws 187, 189 (current version at TEX.REV.CIV.STAT.ANN. art. 8306 § 10 (Vernon Supp.1986)).[6]

Because Mathis seeks compensation for successive general injuries, we must also consult, construe and apply the Act's section 12c which was in effect at the times when Mathis sustained these injuries.[7] That section reads as follows:

Sec. 12c. If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association shall be liable because of such injury only for the compensation to

---

**4.** Hardship issues were answered favorably to Mathis in each case.

**5.** Contribution is the subject of Special Issues Nos. 52–57.

**6.** The 1973 version of section 10 as quoted above was in force at the times of Mathis' 1978, 1979 and 1980 injuries and clearly controls the compensation due him for total and permanent incapacity of which each of those injuries is a producing cause. Because of the posture of the case before us, we need not consider the 1981

revision of section 10 codified as TEX.REV.CIV. STAT.ANN. art. 8306, §§ 10(a)–10(d) (Vernon Supp.1986). All references herein to section 10 are to the 1973 version unless otherwise noted.

**7.** Act of June 16, 1977, ch. 801, § 1, 1977 Tex. Gen.Laws 2004, 2005 (current version at TEX. REV.CIV.STAT.ANN. art. 8306, § 12c (Vernon Supp.1986)). All references to section 12c in this opinion are to the 1977 version of that section unless otherwise noted.

which the subsequent injury would have entitled the injured employee had there been no previous injury; provided that there shall be created a fund known as the 'Second Injury Fund,' hereinafter described, from which an employee who has suffered a subsequent injury shall be compensated for the combined incapacities resulting from both injuries. Provided further, however, that notice of injury to the employer and filing of a claim with the Industrial Accident Board as required by law shall also be deemed and considered notice to and filing of a claim against the 'Second Injury fund.'

Act of June 16, 1977, ch. 801, § 1, 1977 Tex.Gen.Laws, 2004, 2005 (amended 1985).

In their reply to Mathis' contention that the trial court should have rendered judgments for him in Cause Nos. 82–136 and 82–135, the companies assert that a worker is entitled to but one award for total and permanent incapacity produced by a general injury, and since the jury found that the initial injury in 1978 was a producing cause of total and permanent incapacity to which the subsequent injuries could not have contributed, the language of section 12c "deems the 1978 injury to contribute 100% of Mathis' present incapacity." In addition, the companies contend that section 10 limits Mathis' recovery to a period of 401 weeks.

In essence, the companies contend that proper construction of sections 10 and 12c compels the conclusion that the trial court's disposition of the four consolidated suits was correct "if . . . supported by evidence." The companies offer no authority in support of this contention and candidly admit in their brief that there is no reported appellate decision in this state applicable to the facts here, that is, when a claimant is seeking simultaneous recovery of compensation for total and permanent incapacities

produced by successive general injuries. The companies urge us to consider the applicable statutes "along with a dose of good common sense" and affirm the take-nothing judgments, thereby holding that Mathis simply cannot "collect four separate awards for total-permanent disability" for his four back injuries. The companies cite several cases in support of their argument that recovery for each of the disabilities would be contrary to the Act.[8] They argue that Mathis is entitled to only one award of compensation for total and permanent incapacity because otherwise, at least in theory, he would recover double compensation for the same periods of time whether or not each award is proportionately reduced. The companies contend that since Mathis' initial injury of 1978 was found to have been a producing cause of total and permanent incapacity, logically, section 12c has no application because the subsequent injuries of 1979, 1980 and 1981 could not have contributed to such incapacity. We agree that section 12c is *not* applicable to the condition of incapacity produced by the 1978 injury.

In *TEIA v. Morrell,* 356 S.W.2d 221 (Tex. Civ.App.—Amarillo 1962, writ ref'd n.r.e.), the court, in applying section 12c,[9] rejected the association's contention that if a worker sustains a partial permanent incapacity, he can never recover compensation for total incapacity for any period of time. The previous injury in *Morrell* was a back injury, the claim for which was settled by Morrell. The claim giving rise to the action before that court was a heart attack which the jury found was a producing cause of total and permanent incapacity. Based on the incapacity finding and the jury's finding that, in effect, the back injury did not contribute to Morrell's present incapacity, the trial court rendered judgment for Morrell for compensation for the total and per-

---

8. *Liberty Mut. Ins. Co. v. Peoples,* 595 S.W.2d 135, 139 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.); *Liberty Mut. Ins. Co. v. Graves,* 573 S.W.2d 249, 252 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); and *Traders & Gen. Ins. Co. v. Wyrick,* 118 S.W.2d 923, 924 (Tex.Civ.App. —San Antonio 1938, no writ).

9. Act of June 6, 1947, ch. 349, § 1, 1947 Tex. Gen.Laws 690, 691. The pre-1971 version was identical to the 1977 amendment except for the last sentence of the 1977 amendment which is not pertinent here.

manent incapacity. Thus under the decision in *Morrell*, the claimant was permitted to recover compensation for separate overlapping periods of incapacity.

■ In *Liberty Mutual Insurance Company v. Graves*, 573 S.W.2d 249 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd n.r. e.), Graves brought suit to recover compensation for two separate back injuries occurring in 1973 and 1975. The jury found that each injury was a producing cause of total and permanent incapacity beginning on January 4, 1975, the day following the 1975 injury. The trial court rendered judgment granting Graves two awards of compensation for total and permanent incapacity, each beginning on January 4, 1975. Liberty asserted in a point of error that "the trial court erred in rendering judgment for two total and permanent incapacities...." commencing on the same day. Liberty, according to the opinion, in its argument on the point, contended that section 12c [10] did not apply "to the facts herein" because the 1973 injury was not a compensable "previous injury" in that it did not produce an incapacity until after the occurrence of the "subsequent injury." *Id.* at 252. The court correctly overruled the point. In order for such an argument to make sense, it is necessary to assume that the 1971 version of section 12c created a *new right* in claimants to recover awards of compensation for overlapping periods of incapacity produced by successive general injuries. The simple truth is that the 1971 amendment to section 12c eliminated the contribu-

tion defense as between the claimant and the carrier and permitted the carrier a recovery against the Second Injury Fund in lieu of the contribution defense. The holding in *Liberty Mutual* supports our decision in this cause that the only limitation in the Act on the right of a claimant to recover multiple awards of compensation for successive general injuries is the contribution defense afforded the companies under section 12c.

The companies argue that the 1971 amendments to section 12c,[11] when read with the 1977 amendments [12] provide support for the trial court's action in these consolidated cases. The companies' theory is that because the "1977 amendment not only removed the only known justification for recovery of concurrent total permanent disability awards, it re-instituted the previous concept that prior and subsequent injuries *do* have an impact upon recovery in successive injury cases ... in this unique situation, to limit the award [of compensation] to a single maximum recovery." (Emphasis in original.)

As already stated, it is clear that the 1971 amendment did abolish, as between the claimant and the carrier, the contribution defense which had existed since 1917. *Liberty Mutual Insurance Company v. Peoples*, 595 S.W.2d 135, 138–139 (Tex.Civ. App.—San Antonio 1979, writ ref'd n.r.e.). But at the same time the amendment gave the *carrier* a right to reimbursement from the Second Injury Fund. Under the pre-1971 (since 1947) and 1977 versions of sec-

---

**10.** "If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association shall be liable for all compensation provided by this Act, but said association shall be reimbursed from the 'Second Injury Fund' as hereinafter described, to the extent that the previous injury contributes to the combined incapacity." Act of May 24, 1971, ch. 316 § 1, 1971 Tex.Gen.Laws 1257.

**11.** Act of May 24, 1971, ch. 316, § 1, 1971 Tex. Gen.Laws 1257. By that Act, the phrase, "the association shall be liable for all compensation provided by this act, but said association shall be reimbursed from the 'Second Injury Fund' as

hereinafter described to the extent that the previous injury contributes to the combined incapacity" was substituted for the phrase, "The association ... shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury; provided that there shall be created a fund known as the 'Second Injury Fund' hereinafter described from which an employee who has suffered a subsequent injury shall be compensated for the combined incapacities resulting from both injuries."

**12.** *See supra* note 7. The 1977 amendment restored the language which had been replaced by the 1971 amendment, *supra* notes 9 and 11.

tion 12c, the carrier was entitled to the contribution defense and the *claimant* had a right to recover from the Second Injury Fund the reduction in benefits authorized by section 12c. In either instance, it logically may be said that the claimant was permitted a "double recovery" of compensation. Our consideration of the history of section 12c [13] persuades us that the legislature initially enacted section 12c in 1917 to abolish the so-called "full responsibility" rule [14] in worker's compensation cases for conditions of incapacity produced by two or more successive injuries.

 In our view, contrary to the companies' position, section 12c contains no language even suggesting that only one award of compensation for total and permanent incapacity is recoverable under the Act. To the contrary, the section only permits a proportionate reduction defense to the carrier against a claim for compensation when the *evidence* establishes that the incapacity forming the basis of the claim was also contributed to by a prior compensable general injury. *St. Paul Fire Marine Ins. Co. v. Murphree,* 163 Tex. 534, 357 S.W.2d 744, 748 (1962).

It may be, as the companies argue, that the proportionate reduction defense afforded carriers by section 12c against the simultaneous assertion of four claims for total and permanent incapacity resulting from successive general injuries all sustained within a period of four years, is inadequate and illogical. However "[i]t is settled law that the ... [worker's] Compensation Act should be liberally construed in favor of the injured [worker], ... [citation omitted] and it would therefore not be proper to supply by implication a restriction on the employee's rights which is not found in the statute." *Miears v. Industrial Accident Board,* 149 Tex. 270, 232

S.W.2d 671, 675 (1950). If this rule of liberal construction were not firmly in place, we would still conclude that no such implication can be found in the language of section 12c even when considered along with the provisions of section 10. Furthermore, the cases cited by the companies in support of their argument that "one of the recognized purposes of that section [12c] is to prevent 'double recovery' for the same incapacity during the same period of disability," state that the proportionate reduction defense provided by section 12c *prevents* double recovery.

The companies further argue that since Mathis alleged, and the jury found, that the initial injury in 1978 was a producing cause of total and permanent incapacity, and that the succeeding injuries caused "that same maximum state of incapacity," section 12c is not applicable and section 10 [15] mandates that Mathis is entitled to but one award of compensation for total and permanent incapacity in the cases before us. In order that the substance of the companies' argument may be properly understood, we quote the pertinent provisions of the 1981 amendments of section 10, which read:

> (b) If the injury is one of the six (6) enumerated in Section 11a of this article as constituting conclusive total and permanent incapacity, the association shall pay the compensation for the life of the employee, but in no other case of total and permanent incapacity shall the period covered by such compensation be greater than four hundred and one (401) weeks from the date of injury....

TEX.REV.CIV.STAT.ANN. art. 8306, § 10(b) (Vernon Supp.1986).

In order to preserve the integrity of the argument, rather than paraphrase the same, we now quote it:

---

**13.** *See Miears v. Industrial Accident Board,* 149 Tex. 270, 232 S.W.2d 671 (1950); and *Liberty Mutual Insurance Company v. Peoples,* 595 S.W.2d 135 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.).

**14.** *See Liberty Mutual Insurance Company v. Peoples,* 595 S.W.2d at 138; and 2 A. Larson, *Workmen's Compensation,* § 59 (1979 ed.).

**15.** The companies quote a portion of section 10(b) which is a part of the 1981 revision of section 10. The 1981 amendments are not applicable to the 1978, 1979 and 1980 injuries but would be pertinent to the 1981 injury.

... Secondly, note that in prior Subsection (b) the phrase " * * * in no case ...", which could have been misconstrued as referring to the disability for which compensation was sought, was changed by amendment to ' * * * in no *other* case of total and permanent incapacity ...', a more expansive phrase which, particularly from the word "other", can easily be seen as referring to different claims for total disability resulting from different injuries.

... Thirdly, the same conclusion can be drawn from changing the phrase ' * * * *the* injury * * * ', which could have been misconstrued as referring to the injury for which compensation was sought, to 'injury', so as to plainly refer to *any* injury, not limited to one injury, and to clearly imply that the 401 week limitation period applies to one or as many injuries as are alleged to cause total disability. (Emphasis in original.)

■ We find the foregoing argument unpersuasive. We conclude that the phrase "but in no other case of total and permanent incapacity" was employed by the legislature simply to make the distinction between payment of weekly benefits for life for the injuries specifically enumerated in section 11a of art. 8306,[16] and the payment of weekly benefits for only 401 weeks for all other general injuries producing total and permanent incapacity. Furthermore, the proper construction of section 10(b) as amended in 1981, is wholly immaterial to Mathis' rights of recovery of compensation for the 1978, 1979 and 1980 injuries. For the reasons stated, we reject the companies' contentions.

■ The burden of proof rests upon the carrier to establish the compensability and the causal relationship of a previous injury offered as an affirmative defense by the carrier as well as the percentage of contribution of the previous injury to the incapacity to which the injury being litigated is a producing cause. *Transport Ins. Co. v.*

*Mabra,* 487 S.W.2d 704, 707 (1972). Two contribution issues were submitted to the jury respecting each of the 1978, 1979 and 1980 injuries [17] in the form as follows:

Do you find from a preponderance of the evidence plaintiff's injury of [month, day, year], when working for Kelly Springfield Tire Company, has contributed *to the incapacity found by you?* (Emphasis added.)

Answer: 'It has not contributed' or 'It has contributed.'

Answer: _____

Find from a preponderance of the evidence the percentage, if any, that plaintiff's injury of [month, day and year] has contributed *to the incapacity found by you.* (Emphasis added.)

Answer by giving a percentage, if any.

Answer: _____

In response to these six issues, the jury found that each injury inquired about contributed to Mathis' condition of incapacity, and that the 1978 injury contributed 40%, the 1979 injury 20% and the 1980 injury 40%. Contribution issues are submitted under section 12c when the evidence shows that two or more injuries contribute to the claimant's condition of incapacity. The State Bar committee on pattern jury charges recommends that in a case which involves multiple injuries a separate set of issues on contribution be submitted as to each injury. 2 State Bar of Texas, *Texas Pattern Jury Charges,* PJC § 25.05 and accompanying comment at 116–118 (1970). Assuming that the evidence raised the issues, that recommendation should have been followed in this case. Three separate contribution issues should have been submitted inquiring whether the 1978 injury contributed to Mathis' condition of incapacity as it existed following the 1979, 1980 and 1981 injuries. Two separate contribution issues should have been submitted inquiring whether the 1979 injury contributed to Mathis' condition of incapacity as it existed following the 1980 and 1981 inju-

---

16. TEX.REV.CIV.STAT.ANN. art. 8306, § 11a (Vernon 1967).

17. Special Issues Nos. 52 through 57.

ries; and finally, a contribution issue should have been submitted inquiring whether the 1980 injury contributed to Mathis' condition of incapacity as it existed following the 1981 injury. Additionally, separate issues inquiring about the percentage of contribution of each previous injury inquired about in the issues above should have been submitted as indicated by PJC § 25.05.

■■■ The form of the first of the two recommended contribution issues set forth in PJC § 25.05 [18] "Do you find from a preponderance of the evidence that plaintiff's injury of [month-day-year] when working for A.B.C. Company, has contributed *to the incapacity found by you?*" (Emphasis added.) The closing phrase of such issue, "to the incapacity found by you" is appropriate when only one injury is the subject of the suit, but is not only inappropriate where two or more injuries form the basis of plaintiff's claims for compensation, but in effect, renders the findings totally meaningless and thus immaterial because the findings cannot form the basis of a judgment. In the case at bar, unfortunately each contribution issue submitted closed its inquiry with that exact language. Therefore, the findings made by the jury in response to Special Issues Nos. 52 through 57 are decidedly immaterial, meaningless and will not support the proportionate reduction defense provided by section 12c. The failure of the companies to secure submission of the contribution issues properly framed to present the controlling fact issues of the contribution defense afforded them by section 12c, operates as a waiver of that defense. TEX.R.CIV.P. 279; *Denton Publishing Co. v. Boyd,* 460 S.W.2d 881, 885 (Tex.1970). It follows that the answers to the contribution issues did not decide the ultimate fact questions essential to the companies' contribution defense.

Therefore, those findings should be disregarded as immaterial. *Driver v. Worth Construction Co.,* 154 Tex. 66, 273 S.W.2d 603, 606 (1954); *see also Travelers Insurance Company v. Glenn,* 358 S.W.2d 136, 138 (Tex.Civ.App.—Beaumont 1962, writ ref'd n.r.e.); 4 R. McDonald, TEXAS CIVIL PRACTICE § 17.31 (rev. 1984).

By two cross-points in Cause Nos. 82–134, 82–135 and 82–136, the companies assert that the take-nothing judgments should be affirmed because there is no evidence to support the wage rate findings.[19] Alternatively, the companies argue that should the take-nothing judgments be reversed, all causes should be remanded for a new trial because of fatal conflict between the overlapping findings of total and permanent incapacity and the findings of contribution. The basis of the first cross-point is that the only evidence of wage rate presented by the plaintiff constituted hearsay and has no probative value.[20] By a single point of error in Cause No. 82–137, Charter Oak contends that the court reversibly erred in overruling its motion for judgment n.o.v. because there was no evidence to support the jury's answer to Special Issue No. 11 regarding wage rate. Admittedly the only evidence introduced by Mathis to prove wage rate in these cases were answers to written interrogatories propounded to the carrier in each case. The interrogatory questions and answers in Cause No. 82–137 read as follows:

[Question] 6. Concerning Plaintiff's wages on the date alleged, please state: b. According to your information or the information of Plaintiff's employer, did the Plaintiff work at least 210 days in the employment in which Plaintiff was working on the date alleged in the year immediately preceding the date alleged?

18. Corrected to place burden of proof on carrier; *see* 2 State Bar of Texas, *Texas Pattern Jury Charges,* P.J.C. Section 25.05, Comment (1976 Supp.); *Transport Insurance Co. v. Mabra,* 487 S.W.2d at 707; *Hartford Accident & Indemnity Co. v. Conteras,* 498 S.W.2d 419, 428 (Tex.Civ. App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.).

19. Special Issue Nos. 24, 37 and 50.

20. The cases were tried before the effective date of TEX.R.EVID. 802.

[Answer] 6.b.: *According to informa- tion received* from Kelly Springfield Tire Company, yes.

[Question] 6.e. State the Plaintiff's total earnings for the year preceding the date alleged and the total number of full days and part days Plaintiff worked in that year.

[Answer] 6.e, *According to the infor- mation received* from Kelly Springfield Tire Company, $21,136.70. (Emphasis added.)

■ The interrogatories and answers in Cause Nos. 82–136, 82–135, and 82–134 con- vey information as to wage rate that is of essentially the same nature as that con- tained in the Cause No. 82–137 interrogato- ries and answers, with the difference being that the companies deny that Mathis worked 210 days in the preceding year and the wage rate data is established from an- other worker in Mathis' class who did.[21] In each case, the companies directly attribute the information to Kelly Springfield. We conclude that the answers made to the interrogatories by the companies are ad- missions for the reasons stated in *Com- mercial Standard Insurance Co. v. Bar- ron,* 495 S.W.2d 276, 279 (Tex.Civ.App.— Tyler 1973, writ ref'd n.r.e.); *Snyder v. Schill,* 388 S.W.2d 208, 213 (Tex.Civ.App.—

---

**21.** The pertinent interrogatories and answers in Cause Nos. 82–136, 82–135 and 82–134 read as follows:

CAUSE NO. 82–136

Number 6. Concerning Plaintiff's wages on the date alleged, please state: ... b. According to your information or the information of Plain- tiff's employer, did the Plaintiff work at least 210 days (in the employment in which Plaintiff was working on the date alleged) in the year immediately preceding the date alleged?

[Answer]: b. According to the information received from Kelly Springfield Tire Company, no.

Number 7. If in answer to Interrogatory 6(b) above, the Defendant Insurance Company has answered that the Plaintiff did not work at least 210 days in the employment in which Plaintiff was working on the date alleged, then state: a. Did any other employee of the class of Plaintiff work for Plaintiff's employer as much as 210 days in the year immediately before the date alleged; and if so, give that other employee's full name and address, and also that other em- ployee's total earnings for the year preceding the date alleged and the total number of days worked in that year.

[Answer]: a. According to the information received from Kelly Springfield Tire Company, W.E. Hulsey, P.O. Box K, Tyler, Texas 75702, $22,596.00 for 221 days.

. . . . .

CAUSE NO. 82–135

[Question] 6. Concerning Plaintiff's wages on the date alleged, please state: ... b. Accord- ing to your information or the information of Plaintiff's employer, did the Plaintiff work at least 210 days (in the employment in which Plaintiff was working on the date alleged) in the year immediately preceding the date alleged?

[Answer] 6. b. According to the informa- tion received from Kelly Springfield Tire Com- pany, no.

[Question] 7. If in answer to interrogatory 6(b) above, the Defendant Insurance Company has answered that the Plaintiff did not work at least 210 days in the employment in which Plaintiff was working on the date alleged, then state: a. Did any other employee of the class of Plaintiff work for Plaintiff's employer as much as 210 days in the year immediately before the date alleged; and if so, give that other employ- ee's full name and address, and also that other employee's total earnings for the year preceding the date alleged and the total number of days worked in that year.

[Answer] 7 a. According to the information received from Kelly Springfield Tire Company, W.E. Hulsey, P.O. Box K, Tyler, Texas 75702, $23,280.97 for 285 full days.

CAUSE NO. 82–134

[Question] 6. b. Concerning Plaintiff's wages on the date alleged, please state: ... b. According to your information, or the informa- tion of Plaintiff's employer, did the Plaintiff work at least 210 days (in the employment which Plaintiff was working on the date al- leged) in the year immediately preceding the date alleged?

[Answer] 6. b. According to the informa- tion received from Kelly Springfield Tire Com- pany, no.

[Question] 7. If in the answer to Interrog- atory 6(b) above, the Defendant Insurance Com- pany has answered that the Plaintiff did not work at least 210 days in the employment in which Plaintiff was working on the date alleged, then state: a. Did any other employee of the class of Plaintiff work for Plaintiff's employer as much as 210 days in the year immediately before the date alleged; and if so, give that other employee's full name and address, and also that other employee's total earnings for the year preceding the date alleged and total num- ber of days worked that year.

[Answer] 7. b. According to the informa- tion received from Kelly Springfield Tire Com- pany, W.E. Hulsey, P.O. Box K, Tyler, Texas 75702, $28,047.33 for 250 full days.

Houston 1964, writ ref'd n.r.e.). Charter Oak's point of error in Cause No. 82–137 and the companies' cross-point number 1 in the three other cases are overruled.

We now address the companies' cross-point number 2 in Cause Nos. 82–134, 82–135 and 82–136 and Mathis' points of error 5 and 6 in Cause No. 82–134. The companies assert that the findings of total and permanent incapacity in these cases conflict with themselves and with the jury's answers to the contribution issues. Mathis makes the same argument respecting Cause No. 82–134. We reject both arguments. In each case the jury found only that the injury was *a* producing cause of the incapacity found and did not find that the injury was the *sole* cause of such incapacity. The findings that each of the three injuries contributed to the total and permanent incapacity found by the jury in each case, even if material, do not create a conflict. *TEIA v. Upshaw,* 329 S.W.2d 144, 145–146 (Tex.Civ.App.—Eastland 1959, writ ref'd n.r.e.); *General Insurance Corp. v. Hughes,* 193 S.W.2d 230 (Tex.Civ.App.—Dallas 1946, no writ). Furthermore, as we have stated, the contribution findings are immaterial and may be disregarded. Mathis' points of error 5 and 6 and the companies' cross-point 2 are overruled. We sustain Mathis' points 1–4.

The judgment in Cause No. 82–137 is affirmed. The judgment in Cause No. 82–136 is reversed, and judgment is here rendered in favor of Mathis against Charter Oak for the sum of $43,978.02,[22] of which $10,994.50 is awarded to Bill Clark as attorney fees, together with all costs of court and with interest on the judgment amount at the rate of 10% per annum from March 13, 1986, until paid.

The judgment in Cause No. 82–135 is likewise reversed, and judgment is here rendered in favor of Mathis against Travelers in the amount of $43,236.94,[23] of which $10,809.24 is awarded to Bill Clark as attorney fees, together with all costs of court, with interest on the judgment amount at the rate of 10% per annum from March 13, 1986, until paid.

The judgment in Cause No. 82–134 is affirmed.

---

**22.** Credit given for eleven weeks of compensation benefits.

**23.** Credit given for sixty-four weeks of compensation benefits.