## INDUSTRIAL ACCIDENT BOARD v. MIEARS.

### No. 12146.

Court of Civil Appeals of Texas. Galveston.
Jan. 19, 1950.

Rehearing Denied March 9, 1950.

Price Daniel, Attorney General and L. P. Lollar, Assistant Attorney General, of Austin, for appellant.

Fred Parks and Max H. Jennings, of Houston, for appellee.

CODY, Justice.

Plaintiff, the injured employee, was a one-eyed man in November, 1947 at the time he lost the sight of his left eye by a compensable injury under the Workmen's Compensation Law. Vernon's Ann.Civ.St. art. 8306 et seq. The compensation carrier promptly paid him the appropriate compensation under the law for the loss of an eye. Previously, in 1929, in connection with his employment by the Southern Pacific Railroad, plaintiff had lost the sight of his right eye by a non-compensable injury. In connection with the loss of plaintiff's left eye, the Industrial Accident Board awarded plaintiff compensation out of the Second Injury Fund (which was created and set up by the Workmen's Compensation Law) for 201 weeks. The plaintiff, conceiving himself entitled under the law, to an award out of the Second Injury Fund for 301 weeks disability, filed suit against the Board in the District Court of Harris County, as an appeal from an award of the Board. No question was made before the Board, or before the court below, but that plaintiff was a totally disabled person under the law, and was entitled to participate in the Second Injury Fund to the extent authorized by law for total permanent disability. No contention was made by plaintiff that the insurance company had not fully discharged its liability, and the Board alone was sued by plaintiff, to the end that plaintiff recover 301 weeks compensation out of the Second Injury Fund, instead of the 201 weeks awarded by the Board.

The members of the Board filed their plea of privilege to be sued in Travis county, the county of their residence, and the seat of State government. Additionally, the Board alleged that, in substance, plain-

tiff's suit was one for a writ of mandamus to require the Board to permit plaintiff to participate in the Second Injury Fund, and that under Subdivision 20 of Article 1995, the suit must be brought in Travis County. Plaintiff seasonably filed his controverting affidavit, and in a trial to the court without a jury, the court overruled the plea of privilege.

The judgment overruling the plea of privilege contains the following findings as facts:

"That this cause is an appeal from a final ruling, decision and award of the Industrial Accident Board of the State of Texas, made and entered by said Board on October 8, 1948, in Cause No. H-6356, entitled F. M. Miears, employee v. Second Injury Fund * * * ; that the final ruling and award of the Industrial Accident Board has been duly and properly appealed from, and this suit has been filed within the time prescribed by law, and that the plea of privilege and controverting affidavit thereto have been timely filed and presented, and that this court has jurisdiction to try and determine this cause * * *".

Subject to the plea of privilege, the Board filed its answer which among other things contained a plea in abatement to the effect that the Board could be sued only in Travis county, and that plaintiff's suit was in substance one for a writ of mandamus. Said plea in abatement was overruled.

The court tried the case on the merits without a jury, and found that plaintiff was entitled "to recover of and from the Second Injury Fund created by Section 12c-2 of Article 8306, R.C.S., as amended [Vernon's Ann.Civ.St. art. 8306, § 12c-2], being the same Fund administered by the Industrial Accident Board of the State of Texas, 301 weeks compensation at the rate of Twenty-five and no/100 ($25.00) Dollars per week for total and permanent disability. And that said compensation shall be payable in consecutive weekly installments * * *".

In response to the Board's demand, the court timely filed his conclusions of fact and law which fully supported the judgment which was rendered, and need not be here copied, with the exception of this fact finding "18. That the plaintiff, F. M. Miears, if permitted to do so, would in the trial of this cause, have testified to facts, showing that manifest hardship and injustice would result to him, unless the Compensation due him be paid in a lump sum, and that such fact, within the discretion of the court, would have justified the court in granting a lump sum settlement."

The Board has predicated its appeal upon six points. The plaintiff has appealed from so much of the action of the court which, after finding that plaintiff should have been permitted to recover a lump sum settlement, declined to award same, upon the conclusion that, where the Second Injury Fund was involved, there was no provision authorizing a lump sum settlement. The six points upon which the Board predicates its appeal are, in substance:

1. That there was neither pleading nor proof legally sufficient to authorize plaintiff to sue the Board in Harris county, against its plea of privilege to be sued in Travis county, its official and actual residence.

2. That plaintiff's suit was one in the nature of a mandamus against the Board, a department of the State government, and under subdivision 20, Art. 1995, the district court of Travis county has exclusive jurisdiction, and the court erred in not sustaining the plea of privilege.

3. That plaintiff's suit was in the nature of a mandamus against the Board to modify and set aside its order with respect to plaintiff's participation in the Second Injury Fund, and the Board being a head of a department of state government, the suit could be maintained only in Travis county, and the Board's plea in abatement should have been sustained.

4. That the Board's requested findings of fact and conclusions of law should have been granted.

5. That the court erred in awarding compensation to plaintiff for 301 weeks instead of 201 weeks.

6. There being no provision of law for allowance of interest in awards out of the

Second Injury Fund, the court erred in adjudging interest on its award.

The Board's points 1 to 3, inclusive, complaining of the court's refusal of the Board's dilatory pleas, are overruled.

■ By force of Section 5, Article 8307, only the courts of the county where the injury occurred have jurisdiction to try an appeal of a controversy in which the Board has made its final award. Mingus v. Wadley, 115 Tex. 551, 285 S.W. 1084. In the cited case the court said: "The Workmen's Compensation Act having created the rights to be enforced and provided the remedy therefor, each step in the progress of the maturity of a claim from the time of the injury to its final adjudication is a mandatory requirement, necessary to the exercise of jurisdiction by the first and succeeding statutory agencies." Id., 115 Tex. at page 558, 285 S.W. at page 1087; and see 43 Tex.Jur. 710; and Alpha Petroleum Co. v. Terrell, 122 Tex. 257, 59 S.W. 2d 364, opinion adopted by the Supreme Court.

Notwithstanding the decisions by the Supreme Court to the effect that our Workmen's Compensation Act is a complete system within itself, a system "where the cause of action and the remedy for its enforcement are derived, not from the common law, but from the (Workmen's Compensation) Statute"; and in which "the statutory provisions are mandatory and exclusive, and must be complied with in all respects", the Board here urges that the legislature did not intend the injured employee should resort to the machinery set up by the Workmen's Compensation Act for enforcement of his cause of action for additional compensation from the Second Injury Fund, which the legislature created in 1947 as an integral part of the Act. At least, the Board urges that in appealing from the final award of the Board granting or refusing compensation from the Second Injury Fund, the employee must invoke the common law jurisdiction of the courts, and attack such award in the courts of Travis county.

In 1947, the legislature amended Art. 8306, altering to a certain extent Section 12c of Art. 8306, and adding Sections 12c-1, and 12c-2, thereto. As amended, Section 12c of the Article continues its former provision that, for instance, where a one-eyed employee sustains an injury which deprives him of the sight of said eye, thereby rendering him wholly blind, and so, permanently and totally incapacitated, that the compensation carrier shall be liable only for the compensation payable for the loss of an eye. But the amendment provides for the creation of the Second Injury Fund from which an employee who has suffered a subsequent injury *"shall be compensated for the combined* incapacities resulting from both injuries." (Emphasis added.)

The new Section, 12c-1, provides in part: "If an employee who has previously lost * * * one eye, becomes permanently and totally incapacitated through the loss or loss of use of another member or organ, the association shall be liable only for the compensation payable for such second injury provided, however, that in addition to such compensation and after the combination of the payments therefor, the employee shall be paid the remainder of the compensation that would be due for the total permanent incapacity out of the special fund known as 'Second-Injury Fund' hereafter defined."

The new Section, 12c-2, reads in part:

"The special fund known as the 'Second-Injury Fund' shall be created in the following manner: .

"(a) In every case of the death of an employee under this Act where there is no person entitled to compensation surviving said employee, the association shall pay to the Industrial Accident Board the sum of One Thousand, Five Hundred Dollars ($1,-500) to be deposited with the Treasurer of the State for the benefit of said Fund and the Board shall direct the distribution thereof."

■ It is clear that the purpose of the amendment, setting up the Second Injury Fund, was to remove the defect of the Act theretofore existing, whereby the employee who received an injury to an organ or member of his body, which rendered him

totally and permanently incapacitated because of a previous injury, should receive compensation for total permanent incapacity, though the compensation payable by the compensation carrier should be limited to compensation for the loss of the use of the member or organ. This Second Injury Fund is made up of what may be called "wind-falls", i.e., from a portion of the compensation which is due and payable under the provisions of the Act, but which, because of the accidental situation that an employee left no survivors entitled thereto under the Act, has no taker.

For the purpose of determining the remedy of an employee to obtain compensation from the Second Injury Fund, it is sufficient to say that the powers and duties of the Board, with respect to the administration of the Second Injury Fund, are to see to it that a compensation carrier which ought to pay $1,500.00 into the State treasury for the benefit of the Fund, does so, on the one hand; and to award to a qualified employee upon his proper application therefor the compensation which is payable to him out of said Fund, on the other.

The Board, and the members thereof, have no pecuniary interest in the Fund. The Fund belongs to the State, and is deposited in the State treasury. A proceeding by an employee, whether before the Board or before the courts, to obtain compensation benefits out of said Fund, is a proceeding against the State, however said proceeding may be denominated in the pleadings, or upon the docket of the Board, or upon the dockets of the courts. The liability of the Fund, for the payments of additional benefits for a second injury does not differ, except in amount, from the liability of the compensation carrier to pay the employee for the loss of the use of the member or organ which, because of the previous injury totally and permanently disables the employee.[1]

Since the liability of the assets of the compensation carrier, and the liability of the Fund for additional compensation, is identical in cases where a second injury is concerned, how could the framers of the amendment justify requiring the employee to proceed against the compensation carrier in the courts of the county where the injury was sustained, and against the Fund in the Courts of Travis county? The cardinal principle upon which rules of procedure are based condemns a multiplicity of suits. And there is no reason to suppose that the legislature intended to violate this cardinal principle by requiring the employee to appeal from a final award against the compensation carrier, and from a final award against the fund, for the same injury, in different proceedings, in different courts.

It is true that in this particular case, the Board and the plaintiff have, by stipulations, reduced their controversy to a question of law. That is to say, the Board has admitted that plaintiff lost his only eye in 1947 by a compensable injury, and is entitled to such compensation out of the Second, Injury Fund, as provided by law under the state of facts which both parties have stipulated to be true. But the parties have agreed that the eye, which was lost in 1929, was lost as a result of an injury which was not compensable, because plaintiff was then an employee of a railroad company, and so excluded from the Act. The Board contends that, in addition to deducting the compensation which was paid plaintiff for the loss of his eye in 1947, there must also be deducted compensation for the loss of the eye in 1929, though the loss was not due to a compensable injury. Whereas plaintiff contends that, under the law, he is entitled to receive the balance of the compensation due for total and permanent disability, after deducting the compensation received by him for the compensable injury received in 1947. At this point we are concerned only with the method by which an employee must appeal a final award made by the Board, and not how the question of law as to the amount of the compensation must be answered. That is to say, we are now at this point concerned with whether

---

1. Indeed, the employee can be entitled to recover from the Fund only if he is able to show a right to recover from the insurance carrier.

the district court of Harris county has exclusive jurisdiction to determine the question of law, or whether the Board has a right to have the cause removed to Travis county, and have the district court there determine the question.

We may be sure that in future cases, an occasion will arise where the compensation carrier will contest its liability to compensate for an injury for which the employee asserts a claim against the Fund for additional compensation. For instance, the compensation carrier may believe that the injury was not received in the course of the claimant's employment, or raise some other fact issue as to liability for the injury. The Board could hardly make an award against the Fund, except such award be contingent upon the compensation carrier being found liable for a second injury. The legislature has manifested no intention in the Act that the employee shall pursue separate appeals against the compensation carrier and the Board. It has fixed the jurisdiction of the courts to try the appeal to be in the county where the injury occurred, irrespective of whether the parties may, after suit is filed, narrow the controversy to a question of law to be decided by the court; and irrespective of whether the compensation carrier passes out of the case by paying plaintiff's demands.

A proceeding by a claimant against the Fund differs in no material way from a proceeding by a claimant against the assets of a compensation carrier. Where the proceeding is jointly against the Fund, as administered by the Board, and against the assets of the compensation carrier, as administered by the insurance company, the Board will naturally regard the insurance company as one of the parties defendant to the proceeding, and the State as another party defendant. If the insurance company gets out of the proceeding by paying the claim, the Board will, in practice, and in the prudent administration of the Fund, call upon the Attorney General to defend against the proceeding, except perhaps in a case where the liability of the Fund is manifest, and except where the amount of the liability is certain. This, because the Fund belongs to the State, and is subject to the lawful claims of injured employees.

We agree with the Board, that the legislature never intended to cast the Board in the role of a party to a controversy which it was called upon to decide impartially between the parties. The Board is an administrative tribunal of the State, just as a court is a judicial tribunal of the State. In passing upon the lawful claim of an employee against the Second Injury Fund, belonging to the State, the Board is not placed in any different position from that of a judge in passing upon a cause of action urged against the State in the court over which he presides. As administrator of the Fund, the Board is by law bound to be fair and impartial alike to the State, to whom the Fund belongs, and to the employee who urges a claim there against.

It was only by a process of evolution in England that the judges of the king's courts became independent of the king. And the king, like any other lord, could be sued in his own court only by his consent. It is upon this principle that the State cannot be sued in its own courts, except with its consent. Below, the Board urged as grounds for a plea in abatement, that this suit was in fact against the State, and that the plaintiff must apply to the Legislature for relief. The Board has here abandoned such position, no doubt upon the consideration that the Act gave the State's consent to be sued with respect to said Fund, by those given a right of compensation therefrom. Since the Act makes the Board the administrator of the Fund in the restrictive sense stated above, we have no quarrel with the fact that the plaintiff made the State a party merely under the name of the Board, for the purpose of suing in the courts. Before the Board, the Fund was proceeded against as though it were a legal entity. But as indicated above, the State was the party with interest adverse to the claimant not only before the courts, but while the controversy was still pending before the Board.

We overrule the Board's point 4. The Board requested that the court find as

a *fact* that it was created by law to exercise the duties and functions imposed upon it by law, and that it does act as an agent of the State when it performs its functions, and was so acting when it made the award in this case. The Board further requested that the court find as a *fact* that this suit was instituted against the Board as the sole defendant for the purpose of seeking the relief of the court in modifying the order and award for the Board. This, for the purpose of having the court sustain the conclusion that this procedure is not an appeal from the Board's award, provided for under the Workmen's Compensation Act. The court committed no reversible error in declining to make the requested conclusions of fact and law.

The Board's point 5 raises the question of law which goes to the merits of the suit. By said point the Board urges that the court erred in granting compensation for 301 weeks, instead of for 201 weeks. By the Workmen's Compensation Law, the compensation for loss of an eye is fixed at 100 weeks.

Under the Workmen's Compensation Law, the compensation for total permanent disability is fixed at 401 weeks. The Board construed the Act to require that the compensation for the loss of the eye due to the non-compensable injury, which occurred in 1929, be combined with the compensation paid plaintiff for the loss of his eye which occurred in 1947, and that, since the compensation payable by the compensation carrier for the loss of an eye is fixed at 100 weeks, in order to determine the amount of additional compensation which is payable from the Second Injury Fund, the compensation for two periods of 100 weeks (covering the loss of both eyes) be deducted from 401 weeks, leaving 201 weeks, as the amount fixed by law which is due plaintiff from the Fund.

The plaintiff claims that under the provisions of the Act, he is entitled to 301 weeks. He received 100 weeks compensation from the compensation carrier for the loss of his eye in 1947. Under his construction of the Act, he is entitled to receive as additional compensation, the dif-

ference between what he so received, and 401 weeks, or 301 weeks. The trial court sustained this contention.

The compensation Act is a remedial statute, and should be construed liberally with a view to accomplish its purpose and promote justice. The courts will, where reasonably possible, construe the act in favor of the injured employee and the beneficiaries designated "in order to give the relief intended, and effectuate the beneficent purposes of the legislature. By 'liberal construction' is meant that the courts will give the language of the amendment its generally accepted meaning to the end that the most comprehensive application thereof may be accorded without doing violence to any of its terms. Any reasonable doubt that may arise as to the right of the injured employee to compensation will be resolved in favor of that right". 45 Tex. Jur. 363.

Bringing this rule of construction to the task of construing the amendment under consideration we find that Section 12c, Art. 8306 provides for the creation of the Second Injury Fund, from which an employee who has suffered a subsequent injury "shall be compensated for *the combined incapacities* resulting from both injuries." Section 12c-1 repeats the provisions that the insurance carrier shall be liable only for the compensation payable for the loss of a member or organ of the body, where the same constitutes a second injury "provided, however, that in addition to such compensation and after the combination of the payments therefor, the employee shall be paid the remainder of the compensation that would be due for the total permanent incapacity out of the special fund * * *". It is to this court clear that the Act does not provide that the employee shall receive the difference between the compensation due the employee from the compensation carrier for the second injury, and compensation for 401 weeks. But it is quite clear that the injured employee shall receive, in addition to the compensation due the employee for the second injury, compensation out of the fund, after combining such benefit with the

benefit prescribed by the law for the first injury.

We are aware that our construction of the provision differs from the construction placed on a similar provision in the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., by the supreme..court of the United States in the case of Lawson v. Suwanee Fruit and Steamship Co., 336 U.S. 198, 69 S.Ct. 503. We consider the provision under consideration too clear to require further discussion. We may·say that we are not governed by any consideration that the construction contended for by the plaintiff would result in him getting a greater compensation from the Fund than an employee could get whose first injury was compensable; it merely seems to us, as stated, that the provision is clear that the compensation due for the first injury must be combined with the compensation due for the second injury in arriving at the additional compensation. We sustain the Board's point 5.

■ We overrule the Board's point 6. R.C.S. Art. 5072 provides that all judgments of the courts of this state shall bear interest at the legal rate. The provision under consideration is an integral part of the Workmen's Compensation Law, and the claimant against the Second Injury Fund has the same rights as the claimants of benefits from compensation carriers. It is well settled that weekly payments from compensation carriers bear interest. See Texas Employers' Ins. Ass'n v. Suttles, Tex.Civ.App., 57 S.W.2d 624, 626 (writ refused).

■ By his cross-point, plaintiff complains of the court's refusal to enter judgment for a lump sum payment. It is clear from the court's findings of fact that, in the exercise of his discretion he thought the plaintiff·should receive his compensation in a lump sum payment, but declined to give judgment therefor solely because of his conclusion that the law creating the Second Injury Fund did not authorize such a judgment.

It is well settled that under the Workmen's Compensation Law, the court or jury have the discretion to determine what constitutes a "special case" for which a lump sum award may be made. 45 Tex.Jur. 695; See Consolidated Underwriters v. Saxon, Tex.Com.App., 265 S.W. 143. From our view that the right of an employee to additional compensation out of the Second Injury Fund is an integral part of the Workmen's Compensation Law, it follows that such right is subject to the same provisions of the Act as is the right to recover compensation in other instances, because the legislature did not see fit to provide otherwise. Having found as a fact that plaintiff should be paid his compensation in a lump sum, the court erred in not rendering such judgment. We sustain plaintiff's cross-point.

The court's judgment will accordingly be modified to the extent that plaintiff shall recover compensation for 201 weeks, instead of 301 weeks, and that such compensation be paid in a lump sum. As so modified the judgment is affirmed.

Modified and affirmed.