Vera N. **MARTINEZ**, Petitioner,

v.

**SECOND INJURY FUND OF TEXAS**, Respondent.

No. C–8081.

Supreme Court of Texas.

May 9, 1990.

---

Jack W. London, Austin, for petitioner.

C. Vernon Lawson, David A. Wright, Austin, for respondent.

## OPINION

MAUZY, Justice.

The issue in this workers' compensation action is whether suits against the Second Injury Fund (Fund) must be filed within the same time period prescribed for actions to set aside decisions of the Industrial Accident Board (Board). We hold that notice to the Board is deemed and considered notice to and filing of a claim against the Fund.

Vera N. Martinez, whose right leg was impaired by childhood polio, injured her left leg at work. The Standard Fire Insurance Company contested its liability for the extent of the work injury both before the Board and the trial court.

Before trial, Standard Fire Insurance Company conceded its liability for 100 percent permanent disability to Martinez' left leg, and obtained leave of court to join the Second Injury Fund as a third party. Thereafter, Martinez filed a third party petition against the Second Injury Fund to obtain compensation for the remainder of total and permanent disability benefits. The Fund moved to dismiss both claims against it for want of jurisdiction on the ground that neither was filed within twenty days after Martinez' notice to the Board that she would not abide by its decision, the period prescribed by article 8307, section 5, TEX.REV.CIV.STAT.ANN. (Vernon Supp. 1990).[1] The district court denied the Fund's motion.

Trial was to a jury, which found that Martinez had lost the use of her right leg due to polio, and that the lost use of both legs had left her totally and permanently incapacitated for work. Based upon the jury's findings, Martinez recovered judgment against Standard Fire for 100 percent permanent disability to her left leg (representing 200 weeks of compensation to the date of the jury verdict), and the balance of compensation due for her total and permanent incapacity benefits from the Fund.

Holding that the district court lacked jurisdiction against the Fund as a party not named to the action within the time permitted by article 8307, section 5, the court of appeals reversed and rendered judgment that Martinez recover nothing from the Fund. 756 S.W.2d 877.

### The Fund's History

The Second Injury Fund was created by the Legislature in 1947[2] to remedy an inequity in the Workmen's Compensation Law of 1917.[3] Part I, section 12c of the 1917 law[4] provided that an employee incapacitated by a combination of injuries over a period of time could recover for the later injury only the compensation to which he would have been entitled had he not been previously injured. As explained in *Miears v. Industrial Accident Board,* 149 Tex. 270, 232 S.W.2d 671, 672 (1950), the purpose of this provision was

> to encourage the employment of persons physically handicapped by previous injuries. Obviously, an employer would be discouraged from employing such persons if he knew that under the law his insurer would become liable in the event of a second injury for the disability resulting from the combined effect of the two injuries, and not merely for the disability resulting from the second injury considered alone.

---

1. Except as otherwise noted, all statutory references are to TEX.REV.CIV.STAT.ANN. (Vernon 1967, Supp.1990).

2. Second Injury Fund Act, ch. 349, 1947 Tex. Gen.Laws 690 (amending Tex.Rev.Civ.Stat. art. 8306 (1925)).

3. Workmen's Compensation Law of 1917, ch. 103, 1917 Tex.Gen.Laws 269 (later codified in the 1925 revision of the civil statutes at art. 8306–8309). The 1917 law amended the first version of the law, Law of April 16, 1913, ch. 179, 1913 Tex.Gen.Laws 429.

4. Ch. 103, § 1, 1917 Tex.Gen.Laws 269, 278, codified as article 8306, section 12c.

The salutary purpose notwithstanding, the result was that an employee would recover less compensation if he were totally and permanently incapacitated by a series of injuries than he would recover were he to suffer the same incapacity from a single injury. *Id.* 232 S.W.2d at 673. To alleviate this inequity without impinging upon the policy supporting section 12c, the Legislature amended that section and added sections 12c–1 and 12c–2 [5] to create a Second Injury Fund from which an employee who is totally and permanently incapacitated by successive specific injuries can recover the additional compensation due for such incapacity over the amount due for the later injury. *See id.* 232 S.W.2d at 673–676; *Second Injury Fund v. Keaton,* 162 Tex. 250, 345 S.W.2d 711 (1961).

### *Application of Article 8307, Section 5 to the Fund*

Article 8307, section 5 provides in pertinent part:

> Whenever [a workers' compensation] suit is brought, the rights and liability of the parties thereto shall be determined by the provisions of this law, and the suit of the injured employee or person suing on account of the death of such employee shall be against *the Association,* if the employer of such injured or deceased employee at the time of such injury or death was a subscriber as defined in this law. If the final order of the Board is against *the Association,* then *the Association* and not the employer shall bring suit to set aside said final ruling and decision of the Board, if it so desires, and the Court shall in either event determine the issues in such cause … (1977) (emphasis added).

As the Fund concedes in its brief to this court, this article mandates not only when suit should be instituted but also against whom such suit should be brought within the specified limitations period. Neither this nor any other statute specifies that its provisions apply to actions involving the Fund.

By statute, the Fund is neither "the association" nor an insurance company. "Association" is defined in article 8309, section 1 as follows:

> Definitions …
>
> "Association" shall mean the "Texas Employers' Insurance Association" or other insurance company authorized under this Act to insure the payment of compensation to injured employees or to the beneficiaries of deceased employees.

An "insurance company" is defined in article 8309, section 2 as an insurance company lawfully transacting a liability or accident business in Texas. Neither definition mentions or includes the Fund. Further, article 8306, section 12c–2 which creates the Fund and defines its procedures, does not include the Fund as an "insurer" or "the Association." Indeed, the statute provides that the Fund is essentially a bank account, comprised of payments by insurance companies from workers' compensation death benefits due workers with no beneficiaries.

Article 8306, sections 12c and 12c–1 prescribe the manner in which the Fund must pay out money. Neither these nor any other section of the Workers' Compensation Act provide that suits against the Fund are subject to the provisions of article 8307, section 5. Nor does any section incorporate article 8307, section 5 by reference. The Legislature has carefully specified that the *only* cases to which article 8307, section 5 applies are those governed by its own terms and those in which its terms are incorporated by reference.

In *Johnson v. Second Injury Fund,* 688 S.W.2d 107 (Tex.1985), we held that the Fund is not the same as an insurer, procedurally or substantively. In *Johnson,* the Fund sought to establish for itself the right of subrogation that insurers have, even though the statutes creating the Fund are silent on the question of subrogation. This Court expressly rejected this argument,

---

5. Ch. 349, 1947 Tex.Gen.Laws 690, amending Tex.Rev.Civ.Stat.Ann. art. 8306 (1925) (section 2: "there is an urgent need to facilitate the employment of handicapped persons including a large number of returning veterans through the establishment of a Special Fund out of which such persons may be compensated when they sustain a subsequent injury.")

since although given the opportunity, the Legislature had not added the rights sought by the Fund.[6] The Court held that neither rights nor duties of the Fund could be created by implication. *Id.* at 109. The Court further held that the rule of construction concerning proceedings involving the Second Injury Fund is "expressio unius est exclusio alterius;" enumeration in a statute of a particular person, thing, consequence or class is equivalent to an express exclusion of all others. *Id.* at 108–109. Article 8307, section 5 enumerates provisions applicable to the Association and employers, but does not mention the Fund. Because it is not listed in article 8307, section 5, the fund is not included in the mandatory procedures of that statute.

In fact, the only statute that does prescribe any procedure for a claimant to follow in pursuing a claim against the Fund is article 8306, section 12c, which provides in pertinent part:

"... notice of injury to the employer and filing a claim with the Industrial Accident Board as required by law shall also be deemed and considered notice to and filing of a claim against the 'Second Injury Fund.'"

No other provision in the Act regulates the filing of suits against the Fund. No other provision mandates a separate suit, a separate proceeding at the Board, a separate award, a separate appeal, a separate trial, or any other procedural event to bring an action against the Fund. Indeed, the Legislature amended the statute in 1977 to add the clear language of article 8306, section 12c that once notice is given the Board, the case shall be considered to include a claim against the Fund.[7] The Legislature could have taken the opportunity in 1977 to add procedural steps to Second Injury Fund cases. It could have done so by express provision in the Second Injury Fund statutes or by defining the Fund as "the association" or as an "insurance company." It could have done so by adding the Fund to the list of parties to suits when it amended article 8307, section 5. However, the Legislature did exactly the opposite when it removed procedural steps for claimants in Second Injury Fund cases. Thus, the current statutes only require claimants to give notice of injury to the employer and file a claim with the Board against the insurer. Such action is deemed notice and claim against the Fund by the express terms of article 8306, section 12c.

Evidence in the record shows that Martinez both timely notified her employer and timely filed her claim with the Board. The executive director of the Board, Mr. William Treacy, testified that Martinez' employer timely filed a report of injury with the Board. Further, Mr. Treacy testified that the Board is fully aware that notice of injury to the employer and filing a claim within one year is deemed and considered notice to and filing of a claim against the Second Injury Fund. The Board agreed that it is required by article 8307, section 7b to fully advise claimants of the requirements to file claims. The uncontroverted evidence in the record, however, shows that there is no statute or rule of the Board requiring the use of any particular words

6. Forty-four days later the Legislature amended article 8307, section 6a to give the Fund the same right of subrogation as compensation carriers. Law of June 8, 1985, ch. 326, 1985 Tex.Gen.Laws 1387.

7. Previously, the Workers' Compensation Act was silent as to the manner in which a claim against the Fund was to be perfected and considered. The question as to when notice to the Fund must be given, and as to when the claim against the Fund must be filed was first considered by this court in *Industrial Accident Board v. Guidry,* 162 Tex. 160, 345 S.W.2d 509 (1961). In holding that the jurisdictional prerequisites of section 4a applied to claims against the Fund, we stated:

If the legislature had intended to provide other and different periods of time within which to give notice and file claims against the Second Injury Fund, it could have easily incorporated such provisions in the Second Injury Fund amendment to the Workmen's Compensation Act. The power rests with the legislature to prescribe the method of procedure under the Act.

*Id.* 345 S.W.2d at 512. As stated above, the 1977 legislative amendments to the Fund provisions prescribed the method of procedure to file a claim against the Fund. This legislative act effectively overruled the holding of *Guidry.*

or the phrase "Second Injury Fund" in making a claim. Nor is there any document, claim form, or instruction either provided by the Board or required by law that instructs any claimant to do anything differently to make a claim against the Fund other than to make an ordinary claim.

The Texas Legislature has mandated the method by which the Second Injury Fund shall be given notice of a claim against it. Thus, we hold that pursuant to article 8306, section 12c, Martinez' notice to the Board is deemed and considered notice to and as filing of a claim against the Fund. The trial court was correct in dismissing the Second Injury Fund's plea to the jurisdiction. We therefore reverse the judgment of the court of appeals and affirm the judgment of the trial court.

HECHT, J., files a dissenting opinion in which PHILLIPS, C.J., and COOK, J., join.

HECHT, Justice, dissenting.

I dissent. Filing a claim with the Industrial Accident Board, and filing suit with a court to set aside the Board's decision on that claim, are obviously different procedures under the Workers' Compensation Law. The Court curiously overlooks this rather elementary distinction. The issue in this case, as the Court correctly states, involves the latter procedure, filing suit to appeal a Board decision. The question is, must such suits against the Second Injury Fund be filed within the same time period prescribed for all actions to set aside decisions of the Industrial Accident Board.[1] The Court answers the question by holding that notice of injury to the Board constitutes filing a claim against the Fund. This holding may well be a correct statement of law, but it has very little to do with this case, and certainly does not answer the question that has been raised. No one disputes that the claimant here timely filed her claim with the Board, that that claim

was against both the Fund and the insurance carrier, that the Board awarded her benefits against the carrier but denied her claim against the Fund, that she timely filed suit against the carrier, but that she did not sue the Fund until the time for appealing the Board award had expired. The issue is not whether the claim against the Fund was timely; it was. The issue is whether the appeal of the Board's decision denying that claim was timely. Without addressing this issue, the Court reverses the judgment of the court of appeals and affirms the trial court's judgment against the Fund. I believe that the appeal was not timely as to the Fund, and that the judgment of the court of appeals should be affirmed.

I

Vera Martinez claims to be totally and permanently incapacitated as a result of the loss of use of her right leg due to childhood polio, and the subsequent loss of use of her left leg due to an injury sustained in the course of her employment. The Industrial Accident Board awarded her compensation only for the total loss of use of her injured left leg and not for her total and permanent incapacity. Two days later Martinez timely notified the Board that she would not abide by its decision and filed suit against the insurance carrier in district court. The carrier did not appeal the Board award.

After the suit had been pending for almost eight months, Martinez and the carrier each filed pleadings naming the Second Injury Fund as a party to the action for the first time. The Fund moved to dismiss the claims against it for want of jurisdiction on the ground that they were not filed within twenty days after Martinez' notice to the Board that she would not abide by its decision, the period prescribed by article 8307, section 5, TEX.REV.CIV.STAT.ANN. (Vernon Supp.1990).[2] The district court denied the

---

1. While this case was pending in this Court, the Legislature enacted a new Texas Workers' Compensation Act, ch. 1, 1989 Tex.Sess.Law Serv. 1 (Vernon 1989). This case is governed by the prior law.

2. Except as otherwise noted, all statutory references are to TEX.REV.CIV STAT.ANN. (Vernon 1967, Supp.1990).

Fund's motion.[3]

At trial, the carrier conceded that Martinez had lost the use of her left leg due to a compensable injury. The jury found that Martinez had lost the use of her right leg due to polio, and that the lost use of both legs had left her totally and permanently incapacitated. The trial court rendered judgment on the verdict that Martinez recover compensation for the lost use of her left leg from the carrier, and the additional compensation due for her total and permanent incapacity from the Fund.[4]

On appeal by the Fund, the court of appeals held that the district court lacked jurisdiction of Martinez' claim against the Fund because it was not named as a party to the action within the time permitted by article 8307, section 5. The court of appeals reversed the judgment as to the Fund and rendered judgment that Martinez recover nothing from the Fund. 756 S.W.2d 877.

## II

The issue raised in this case is not specifically addressed by any statutory provision. Consequently, the analysis must begin with the procedures which govern claims against the Second Injury Fund generally.

## A

As the Court notes, the Second Injury Fund was created by the Legislature in 1947[5] to remedy an inequity in the Workmen's Compensation Law of 1917.[6] Part I, section 12c of the 1917 law[7] provided that an employee incapacitated by a combination of injuries over a period of time could recover for the later injury only the compensation to which he would have been entitled had he not been previously injured. The purpose of this provision, as this Court explained in *Miears v. Industrial Accident Board,* 149 Tex. 270, 232 S.W.2d 671, 672 (1950), was

> to encourage the employment of persons physically handicapped by previous injuries. Obviously, an employer would be discouraged from employing such persons if he knew that under the law his insurer would become liable in the event of a second injury for the disability resulting from the combined effect of the two injuries, and not merely for the disability resulting from the second injury considered alone.

The salutary purpose of the provision notwithstanding, the result was that an employee would recover less compensation if he were totally and permanently incapacitated by a series of injuries than he would were he to suffer the same incapacity from a single injury. *Miears,* 232 S.W.2d at 673. To alleviate this inequity without impinging upon the policy supporting section 12c, the Legislature amended that section and added sections 12c-1 and 12c-2[8] to create a Second Injury Fund from which an employee who is totally and permanently incapacitated by successive specific injuries can recover the additional compensation due for such incapacity over the amount due for the later injury. *See Miears,* 232 S.W.2d at 673–676; *Second Injury Fund v. Keaton,* 162 Tex. 250, 345 S.W.2d 711 (1961).

3. The Fund filed a plea to the jurisdiction, motion to dismiss, and motion for summary judgment, all urging essentially the same position. The district court overruled the plea and denied both motions.

4. Martinez does not claim that she is entitled to lifetime benefits under article 8306, sections 10(b), 11a, 12c and 12c-1.

5. Second Injury Fund Act, ch. 349, 1947 Tex. Gen.Laws 690 (amending Tex.Rev.Civ.Stat. art. 8306 (1925)).

6. Workmen's Compensation Law of 1917, ch. 103, 1917 Tex.Gen.Laws 269 (later codified in the 1925 revision of the civil statutes at art. 8306–8309). The 1917 law amended the first version of the law, Law of April 16, 1913, ch. 179, 1913 Tex.Gen.Laws 429.

7. Ch. 103, § 1, 1917 Tex.Gen.Laws 269, 278, codified as article 8306, section 12c.

8. Ch. 349, 1947 Tex.Gen.Laws 690, amending Tex.Rev.Civ.Stat.Ann. art. 8306 (1925) (section 2: "there is an urgent need to facilitate the employment of handicapped persons including a large number of returning veterans through the establishment of a Special Fund out of which such persons may be compensated when they sustain a subsequent injury").

The 1947 Second Injury Fund legislation was wholly silent as to the procedures for making claims against the Fund. *Keaton,* 345 S.W.2d at 713. Consequently, it soon fell to the courts to speak to this subject. The first occasion came in *Industrial Accident Board v. Miears,* 227 S.W.2d 571 (Tex.Civ.App.—Galveston), *aff'd in part and rev'd in part on other grounds,* 149 Tex. 270, 232 S.W.2d 671 (1950). Miears had lost the sight of his left eye as a result of a compensable injury just five months after the Second Injury Fund legislation was enacted. He had previously lost the sight of his right eye as a result of a noncompensable injury. The carrier paid Miears full compensation for the loss of his left eye, and the IAB awarded him an additional 201 weeks' compensation from the Second Injury Fund for the incapacity resulting from the combined injuries. Claiming that he was entitled to 301 weeks' additional compensation from the Fund, Miears sued the IAB to set aside its award. The IAB contended that Miears' action was actually for mandamus, and that venue was proper in Travis County, the seat of state government, rather than Harris County, where Miears resided. The court of civil appeals rejected the IAB's contentions, reasoning as follows:

> The liability of the Fund, for the payments of additional benefits for a second injury does not differ, except in amount, from the liability of the compensation carrier to pay the employee for the loss of the use of the member or organ which, because of the previous injury totally and permanently disables the employee.
>
> Since the liability of the assets of the compensation carrier, and the liability of the Fund for additional compensation, is identical in cases where a second injury is concerned, how could the framers of

the amendment justify requiring the employee to proceed against the compensation carrier in the courts of the county where the injury was sustained, and against the Fund in the Courts of Travis County? The cardinal principle upon which rules of procedure are based condemns a multiplicity of suits. And there is no reason to suppose that the legislature intended to violate this cardinal principle by requiring the employee to appeal from a final award against the compensation carrier, and from a final award against the fund, for the same injury, in different proceedings, in different courts.

> . . . .

> ... The legislature has manifested no intention in the Act that the employee shall pursue separate appeals against the compensation carrier and the Board.

> . . . .

> A proceeding by a claimant against the Fund differs in no material way from a proceeding by a claimant against the assets of a compensation carrier.

227 S.W.2d at 575–576. This Court affirmed in part and reversed in part on other grounds, without addressing this portion of the appeals court's opinion. 232 S.W.2d 671.[9]

The next occasion for this Court to address the procedures for claiming against the Second Injury Fund came in *Industrial Accident Board v. Guidry,* 162 Tex. 160, 345 S.W.2d 509 (1961). Like Miears, Guidry too claimed to have been totally and permanently incapacitated as a result of the loss of vision in both eyes, one due to an earlier noncompensable injury, and the other due to an injury in the course of employment. Guidry notified his employer of the latter injury within thirty days of its

9. The compensation for loss of an eye was 100 weeks, and for total and permanent incapacity, 401 weeks. The trial court held, contrary to the IAB, that Miears was entitled to additional compensation for the difference between what was due for the incapacity and what was due for the latter injury, or a total of 301 weeks. The trial court also found that Miears ought to be paid in lump sum but concluded that the statute did not require lump sum payment by the Second Injury Fund. The court of civil appeals held that

Miears was entitled to only 201 weeks' compensation, the difference between what was due for the incapacity and what would have been due for both specific injuries had they both been compensable. The appeals court also held that Miears was entitled to be paid in lump sum. The Supreme Court agreed with the trial court that Miears was due 301 weeks' compensation from the Second Injury Fund, and agreed with the appeals court that the compensation was payable in lump sum.

occurrence, and filed his claim against his employer's compensation carrier within six months of the injury, all as required by article 8307, section 4a. However, Guidry did not notify the Second Injury Fund of his injury or file a claim against it within such periods. When Guidry eventually sued the Second Injury Fund for 301 weeks' compensation for his incapacity in addition to the compensation he received for the loss of his right eye, the Second Injury Fund contended that the court lacked jurisdiction of the action because Guidry had failed to meet the notice and filing requirements of article 8307, section 4a, as to it. Ultimately, the Supreme Court upheld the Second Injury Fund's contentions, holding that the requirements of article 8307, section 4a, apply to compensation carriers and the Second Injury Fund alike. The Court reasoned that because the Legislature had made the Second Injury Fund provisions an integral part of the Workers' Compensation Law without specifying the procedures for notice to and claims against the Fund, it intended that *"all* pertinent provisions" for notice to and claims against compensation carriers apply equally to the Second Injury Fund. 345 S.W.2d at 512 (emphasis in original). The Court concluded:

> A proceeding by a claimant against the Second Injury Fund does not differ materially from a proceeding by a claimant against the insurance carrier. It follows, therefore, that all necessary jurisdictional prerequisites as provided in [article 8307, section 4a] must be complied with in suits to secure payment from the Second Injury Fund as are required in other Workmen's Compensation cases.

*Id.*

*Guidry*'s result exceeded its reasoning. Had the Second Injury Fund been treated like an insurance carrier, Guidry's notice to his employer and his claim filed with the IAB should have met the requirements of article 8307, section 4a, for a claim against the Fund. *Guidry*'s requirements that the IAB be given specific notice of a claim against the Fund and that the claim be filed against the Fund directly went beyond the requirements of the statute for claims against carriers.

Nevertheless, the fault in *Guidry*'s result does not impair its rationale. In a similar case decided concurrently with *Guidry*, the appeals court explained:

> The Legislature engrafted the provisions of the Second Injury Fund Act upon the existing Workmen's Compensation Law structure, without providing a detailed procedure for its operation, evidencing by such enactment and the language used an intent that it be administered as a part and in harmony with the existing law. The several provisions of the Workmen's Compensation Law being in pari materia, it follows that it was the intention of the Legislature within certain limitations that the Second Injury Fund be administered in accordance with existing laws governing claims by injured workmen against compensation insurers generally. Therefore, it may be said, it was the intention of the Legislature in second injury cases that the Second Injury Fund be substituted for the compensation insurer in the administration of the law to the extent necessary to accomplish the purposes of the Second Injury Fund Act. It is the legislative intention that the Second Injury Fund stand as the compensation insurer in Second Injury Fund cases so far as a just and harmonious interpretation of the numerous provisions of the compensation law will permit.

*Industrial Accident Bd. v. Parker*, 348 S.W.2d 188, 192 (Tex.Civ.App.—Texarkana 1960, writ ref'd n.r.e.). The court held that Parker's notice of injury to his employer satisfied the requirement for notice to the Second Injury Fund under article 8307, section 4a. Having settled with his employer's carrier, however, Parker had not filed a timely claim with the IAB and thus had not met that requirement of the statute. The court remanded the case in the interest of justice to give Parker an opportunity to show good cause for his failure to file a timely claim.

In sum, three cases address the issue of what procedures apply to compensation

claims against the Second Injury Fund, *Miears, Guidry* and *Parker,* and all conclude that the Fund is to be treated the same as a compensation carrier to the extent possible under the Workers' Compensation Law. The Court refers to *Guidry* only in a footnote, mentions *Miears* briefly, and ignores *Parker* altogether.

### B

The Legislature has never repudiated *Miears, Guidry* and *Parker.* On the contrary, actions by the Legislature in 1971, 1977 and 1985 confirm the rationale and holdings of those cases.

In 1971, the Legislature amended the 1947 Second Injury Fund legislation to provide that a compensation carrier would be fully responsible for the incapacity resulting from successive injuries, but that the carrier could obtain reimbursement of the difference between that amount and the compensation due only for the later injury from the Second Injury Fund.[10] In effect, the 1971 amendments made the claimant against the Fund the carrier instead of the employee. Amended article 8306, section 12c–1, required that a carrier file its claim against the Second Injury Fund within 180 days from the employee's date of injury. Apparently, the Legislature prescribed a time period within which to file claims against the Fund when it had not specified such a period before because in changing the claimant from the employee to the carrier no similar provision of the statute would apply. The carrier is not obliged by any other provision to file a claim with the IAB. Before 1971, the Legislature appears to have been satisfied with the judicial discernment that it intended the Second Injury Fund to be treated like a compensation carrier. When like treatment was made impossible by the 1971 amendments, the Legislature included an additional provision.

In 1977, the Legislature returned the operation of the Second Injury Fund to its 1947 scheme, again making the employee the claimant against the Fund.[11] The Legislature added an additional proviso to article 8306, section 12c "that notice of injury to the employer and filing of a claim with the Industrial Accident Board as required by law shall also be deemed and considered notice to and filing of a claim against the 'Second Injury Fund'." Thus, the 1977 amendments changed the holding of *Guidry,* as the Court correctly observes, and adopted in part the holding of *Parker.* The rationale of those cases, however, and of *Miears*—that the Fund is to be treated like a private compensation carrier—was left undisturbed.[12] The Court appears to rely heavily on the 1977 amendments for its holding. Plainly, however, those amendments pertain only to the filing of claims, and not to the filing of appeals from Board decisions.

In 1985, the Legislature indicated the extent to which it intended the Second Injury Fund to be treated like a carrier. On April 10 of that year, this Court issued its opinion in *Johnson v. Second Injury Fund,* 688 S.W.2d 107 (Tex.1985), holding that the Fund did not have the right of subrogation a carrier has to an employee's recovery against a tortfeasor for an injury on which compensation has been paid. The Court distinguished but did not disavow *Guidry* and *Parker.* Subrogation, the Court said, is a historically limited right in compensation law which ought not to exist unless clearly mandated by the Legislature. Furthermore, the Court reasoned, allowing the Fund a right of subrogation would affect the monies available to it, a matter expressly treated by the statute (in article 8306, section 12c–2), unlike the subject of procedures for claiming against the fund as to which the statute was silent. Only 44 days after *Johnson* issued, the Legislature repudiated the distinction the Court had drawn between the Second Inju-

---

10. Law of May 24, 1971, ch. 316, 1971 Tex.Gen. Laws 1257.

11. Law of June 16, 1977, ch. 801, 1977 Tex.Gen. Laws 2004.

12. What this Court observed in *Second Injury Fund v. Keaton,* 345 S.W.2d 711, 715 (Tex.1961), remains true: "Thus far, the Texas Legislature has not seen fit to enact a comprehensive Second Injury Fund Statute...."

ry Fund and private carriers by amending article 8307, section 6a to give the Fund the same right of subrogation as compensation carriers.[13] Thus, the only case to treat the Fund differently from a compensation carrier was disavowed by the Legislature less than two months after it was decided. *Johnson* is the sole case upon which the Court relies for its holding, as if legislative disapproval were simply inconsequential.

The actions of the Legislature since *Miears, Guidry* and *Parker* were decided have consistently supported their reasoning that "[a] proceeding by a claimant against the Second Injury Fund does not differ materially from a proceeding by a claimant against the insurance carrier." *Guidry,* 345 S.W.2d at 512. It follows, therefore, that the Second Injury Fund should be treated like a private compensation carrier under the Workers' Compensation Law when possible.

### III

Given that a compensation claim against the Second Injury Fund is generally to be treated like a claim against a private compensation carrier, the issue becomes whether the time period prescribed by article 8307, section 5 for suing to set aside a decision of the IAB applies to claims against the Fund, and if so, with what effect in this case.

### A

Article 8307, section 5 provides in pertinent part:

Any interested party who is not willing and does not consent to abide by the final ruling and decision of [the Industrial Accident Board] shall, within twenty (20) days after the rendition of said final ruling and decision by said Board, file with said Board notice that he will not abide by said final ruling and decision. And he shall within twenty (20) days after giving such notice bring suit in the county where the injury occurred, or in the county where the employee resided at the time the injury occurred ... to set aside said final ruling and decision.... When-

ever such suit is brought, the rights and liability of the parties thereto shall be determined by the provisions of this law, and the suit of the injured employee ... shall be against the Association, if the employer of such injured ... employee at the time of such injury ... was a subscriber as defined in this law. If the final order of the Board is against the Association, then the Association and not the employer shall bring suit to set aside said final ruling and decision of the Board, if it so desires, and the court shall in either event determine the issues in such cause, instead of the Board, upon trial de novo, and the burden of proof shall be upon the party claiming compensation.... If any party to such final ruling and decision of the Board, after having given notice as above provided, fails within said twenty (20) days to institute and prosecute a suit to set the same aside, then said final ruling and decision shall be binding upon all parties thereto....

Martinez argues that the filing period of section 5 should not apply to suits against the Second Injury Fund because by its express language section 5 applies only to "the Association", defined in article 8309, section 1 to include insurance carriers but not the Fund. The argument merely begs the question. The very reason for treating the Fund like a carrier is because the Workers' Compensation Law does not specify the procedures to be followed for making claims against the Fund. The Fund is to be treated like a carrier where possible.

Martinez argues that applying the filing requirement of article 8307, section 5 to suits against the Second Injury Fund conflicts with article 8306, section 12c–1, which states that payment by the Fund is to be made after other compensation is paid. By this latter provision, Martinez argues, a claim against the Fund does not accrue until after the carrier's liability is established. This argument, however, directly conflicts with the conclusion of this Court in *Guidry,* that "[b]oth claims should have

---

**13.** Law of June 8, 1985, ch. 326, 1985 Tex.Gen. Laws 1387.

been presented by joint proceedings against the Second Injury Fund as administered by the Board, and against the assets of the compensation carrier administered by the insurance company." *Guidry,* 345 S.W.2d at 512. Applying the filing requirement of article 8307, section 5 to suits against the Second Injury Fund does not conflict with article 8306, section 12c–1, or any other provision of the Workers' Compensation Law.

Martinez attempts to distinguish *Miears,* which held the venue provisions of section 5 applicable to suits against the Second Injury Fund, by arguing that venue is different from jurisdiction. Martinez also tries to distinguish *Guidry* and *Parker* as involving only section 4a of article 8307 and not section 5. Conceding these distinctions, however, does not avoid the common conclusion of these cases that "[a] proceeding by a claimant against the Fund differs in no material way from a proceeding by a claimant against the assets of a compensation carrier." *Miears,* 227 S.W.2d at 576.

Finally, Martinez argues that a claimant should not be required to proceed against the Second Injury Fund on the same timetable as against an insurance carrier because incapacity from successive injuries may not immediately manifest itself. The same argument, however, applies to the consequences of any injury. Prescribing a deadline for claims for incapacity from successive injuries imposes no greater burden on an employee than prescribing a deadline for other claims.

### B

Article 8307, section 5 is mandatory, and no court has jurisdiction over an action to set aside a Board award filed outside the prescribed time period. *Standard Fire Ins. Co. v. LaCoke,* 585 S.W.2d 678, 680 (Tex.1979). Timely suit to set aside a Board award as to one carrier potentially liable on the employee's claim does not preserve the claim against another carrier not timely sued. *Latham v. Security Ins. Co.,* 491 S.W.2d 100, 105 (Tex.1972). Timely suit by an improper party does not preserve the claim of the proper party. *See*

*New York Underwriters Ins. Co. v. Ehlinger,* 593 S.W.2d 432 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ).

Martinez did not sue the Second Injury Fund within the prescribed time period, and the carrier did not sue the Fund by its answer date as permitted by *Latham,* 491 S.W.2d at 103. There is no recourse against the Second Injury Fund for compensation except as authorized by the Workers' Compensation Law. *Keaton,* 345 S.W.2d at 713. Accordingly, Martinez had no cause of action against the Second Injury Fund, and the district court should have dismissed her action for want of jurisdiction.

### IV

The court of appeals rendered judgment that Martinez take nothing against the Second Injury Fund. Rendition of judgment on the merits is inappropriate in an action over which the trial court lacks jurisdiction. Accordingly, I would reverse the judgments of the district court and the court of appeals, and render judgment that Martinez' claim against the Second Injury Fund be dismissed for want of jurisdiction. I therefore dissent.

PHILLIPS, C.J., and COOK, J., join.